571 A.2d 438

**COMMONWEALTH of Pennsylvania**

**v.**

**Thomas Mont PIGG, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1989.

Filed March 7, 1990.

Petition for Allowance of Appeal
Denied Aug. 13, 1990.

Samuel E. Teeter, Gettysburg, for appellant.

Roy A. Keefer, Asst. Dist. Atty., Gettysburg, for Com.

Before CIRILLO, President Judge, and BECK and JOHNSON, JJ.

CIRILLO, President Judge:

Thomas Pigg appeals from his judgment of sentence entered by the Court of Common Pleas of Adams County. We affirm.

The facts and procedural history of this case were comprehensively set forth in the opinion of the Honorable Oscar F. Spicer, President Judge of the Adams County Court of Common Pleas. The trial court found:

> On April 5, 1987, at approximately 5:10 p.m., Jeffery Small drove his car eastward on Pennsylvania Highway Route 116. With him was his wife, Diane, and daughter, Justina. As he entered a curve, he saw an eighteen wheeled tractor trailer completely blocking his path, coming from the opposite direction. As a result of the collision, Diane and Justina were both killed.
>
> Police arrived on the scene shortly thereafter. They determined, from physical evidence, that impact occurred in Mr. Small's lane on the two-lane highway. Empty beer cans were seen in the vicinity of Defendant's truck. The police observed classic signs of inebriation in Defendant's mannerisms, actions, and appearance. Around 7:05 p.m.

samples of Defendant's blood were taken at Gettysburg Hospital as was a later urine specimen. One blood test was conducted at the hospital, yielding a result of .36 percent blood alcohol content. A second sample was sent to the state police laboratory, resulting in a reading of .30 percent. The urine specimen was checked by an independent laboratory and showed a .415 percent blood alcohol content.

G. Thomas Passananti, Ph.D., an expert called by Commonwealth at trial, explained the varying results. For example, the hospital test was based upon blood serum and such tests are higher than for whole blood. The state police test was of whole blood and was considered accurate. Dr. Passananti also described the effects of alcohol on the system and expressed an opinion that Defendant's blood alcohol content could not have been less than .30 percent at the time of the accident.

Defendant testified he was en route from Altoona to Lancaster to pick up a load. He stopped in Breezewood the previous evening and drank beer in his truck. He said that beer cans found at the scene were from that drinking episode. He stopped in Chambersburg on the day of the accident and had lunch, consisting of a cheeseburger, five or six cans of beer and four shots of whiskey. He said he felt normal as he later proceeded eastward on U.S. Route 30.

His first contact, or near contact, with an Adams County resident came just east of Gettysburg. Sharon L. Payne was stopped, facing west and waiting to make a left turn. She looked to see Defendant "laying over the steering wheel" and completely in her lane. (N.T. 40) Defendant swerved back into his lane when Ms. Payne blew her horn.

After Defendant went by, Ms. Payne remembered she needed to buy kerosene and turned around to return to Gettysburg. She was the third or fourth car behind Defendant when he stopped at a traffic light at the

intersection of Buford Avenue, West Street, Springs Avenue and Chambersburg Street.

U.S. Route 30 is known as Buford Avenue west of this intersection and Chambersburg Street east of it. U.S. Route 30 curves to the left as one approaches from the west. If one approached the intersection from the east, Springs Avenue would seem a straight continuation of U.S. Route 30. Springs Avenue, then, intersects at a ninety degree angle with West Street to its south, where the point of the right angle marking the spot where U.S. Route 30 bends towards the north and west.

As Defendant proceeded through the intersection, his truck ran over the curb on the south side of Buford Avenue. He also hit a pole with a street sign on it. Ms. Payne said that wood flew all over and the pole hung halfway from the top.

Defendant said he was unaware of anything out of the ordinary occurring and kept going. Ms. Payne then determined to follow and obtain a license number.

The intersection of U.S. Route 30, (called York Street), Hanover Street, and Liberty Street is somewhat similar to the one earlier described. However, Hanover Street appears to be a continuation of U.S. Route 30 to one travelling east, as U.S. Route 30 again curves to the left. Hanover Street is also Pennsylvania Route 116.

Defendant mistakenly continued straight, instead of following U.S. Route 30, and found himself heading toward Bonneauville and McSherrystown. With Ms. Payne following, he proceeded through Bonneauville and then signalled for a right turn. He did not immediately turn, however, until farther down the highway. He then pulled into a private entrance.

Ms. Payne also turned and then went to Defendant's truck. She asked if he were all right or needed help. She begged him not to continue. Defendant's only response was to tell her to get out of his way, "so he could go down the road." (N.T. 49) When Ms. Payne asked him if he had been drinking, Defendant said he had never

drunk a drop in his life. He then proceeded to pull out, bumping Ms. Payne's vehicle slightly.

Ms. Payne then called the police because she was "worried about this man hurting himself or somebody else." (N.T. 52)

A few minutes later, the fatal collision occurred.

State Police charged Defendant with two counts each of murder in the third degree, homicide by vehicle, homicide by vehicle while driving under the influence, and driving under the influence.

\* \* \* \* \* \*

After a change of venue was ordered, trial occurred in Cumberland County. Commonwealth presented nine witnesses in chief, one on rebuttal and Defendant, two witnesses during the trial. The case was presented to the jury on November 4, 1987. After deliberating for a period of time, the jurors were released and returned the next morning.

Shortly after Court reconvened, the jury asked for additional instructions on malice as it pertained to recklessness on the charge of murder of the third degree. The Court was also asked to discuss "the degrees of recklessness and consciousness." (N.T. 301)

After the Court discussed recklessness, defense counsel requested that a definition of malice again be submitted to the jury. In complying, the Court instructed, inter alia, that "malice consists of cruelty, hardness of heart, an attitude or a mind heedless of social duty" which showed reckless indifference to the value of human life. (N.T. 307) No objection was made to the charge. The jury returned later with verdicts of guilty to all counts....

At trial Pigg was represented by John A. Wolfe, Esquire, who, following the entry of Pigg's convictions, filed timely post-trial motions. On February 16, 1988 attorney Wolfe filed supplemental post-trial motions and at the same time filed a petition to withdraw as Pigg's counsel. On February 19, 1988, Samuel E. Teeter, Esquire was appointed to repre-

sent Pigg and given thirty days to file supplemental post-trial motions. On March 21, 1988, attorney Teeter filed a motion to extend the time for reviewing the record and for filing additional post-trial motions. This motion was granted on the same date and attorney Teeter was given an additional twenty days. On April 11, 1988, attorney Teeter filed a second motion to extend and on April 12, 1988 the court entered an order giving attorney Teeter an additional ten days to review the record and to file supplemental post-trial motions. On April 21, 1988 attorney Teeter filed supplemental post-trial motions. Following oral argument, Pigg's post-trial motions were denied. Thereafter, Pigg was sentenced and filed no motion to reconsider sentence. This appeal followed.

Pigg raises the following issues for our consideration:

(1) Whether the trial court erred when it denied the motion in arrest of judgment of appellant, Thomas Mont Pigg, in respect to the two third-degree murder charges based on appellant's contention that insufficient evidence was introduced by the Commonwealth at trial to prove malice.

(2) Whether the trial court erred in denying appellant's post-verdict motion challenging the adequacy of the trial court's jury instruction on the essential prerequisites for proof of malice based upon the Commonwealth's "recklessness" theory.

(3) Whether the trial court erred by denying appellant's post-verdict motion based upon appellant's claim that his trial counsel was ineffective for failing to object to prejudicial testimony offered by the Commonwealth concerning appellant's prior erratic driving on the day, but not at the time, of the accident.

(4) Whether the trial court erred when it failed to find that the homicide by vehicle while driving under the influence convictions merged for purposes of sentencing into the third-degree murder convictions and whether the trial court exceeded its authority when it imposed consec-

utive sentences on the two homicide by vehicle while driving under the influence convictions.

First, Pigg contends that the Commonwealth's evidence was insufficient to support the two third-degree murder convictions. Specifically, Pigg asserts that the Commonwealth failed to prove the requisite element of malice to support his murder convictions. Moreover, Pigg states that "proof of excessive drinking ... coupled with reckless or careless operation ... of his large tractor trailer rig on the roadway do not in themselves constitute malice absent other proof that [he] was conscious of the extraordinary and unusual peril or probable peril to human life caused by such operation of his vehicle at the time and place of the accident." We disagree.

When reviewing a sufficiency of the evidence claim, this court views the evidence presented, and all reasonable inferences which may be drawn from that evidence in the light most favorable to the Commonwealth, the verdict winner, to determine whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988). It is the province of the trier of fact to assess the credibility of the witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Polk*, 347 Pa.Super. 265, 500 A.2d 825 (1985).

To support a murder conviction, the Commonwealth must prove Pigg committed the killing with malice aforethought. *Commonwealth v. Reilly*, 519 Pa. 550, 549 A.2d 503 (1988). A person may be convicted of third-degree murder where the murder is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought. *Id.* Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868); *see also Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981) (court stated malice is one of the essential

elements of third-degree murder and is the distinguishing factor between murder and manslaughter); *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 444 A.2d 1176 (1982) (third-degree murder does not require the specific intent to kill, but does require malice; malice may be found where the defendant consciously disregards an unjustified and extremely high risk that his actions might cause serious bodily injury.) In addition, it is well established that malice may be inferred from the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 552, 388 A.2d 1068, 1069, *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978).

Although it is rare for a death caused by vehicular incident to give rise to a conviction of third-degree murder, in *Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975), our supreme court found that the requisite element of malice was present where an intoxicated automobile driver traveling at a high speed struck and killed a child on a bicycle near a playground. *Id.*, 461 Pa. at 563–64, 337 A.2d at 548. In finding the evidence sufficient to sustain the third-degree murder conviction, the court stated that the evidence presented to the trier of fact, "the intoxicated condition of the driver, the distance the bodies and bicycles were propelled upon impact, [appellant's] awareness that this was an area where children were likely to traverse, the absence of any physical or climatic condition which could explain or contribute to the happening of the accident, and the appellant's failure to stop immediately after impact," was sufficient basis to establish the presence of malice. *Id.*

In attempting to differentiate *Taylor* from the case at hand, Pigg argues that the evidence failed to show that he was driving at an excessive rate of speed when the accident occurred. He also states that he was unfamiliar with the rural area where the fatal accident occurred, that the weather conditions at the time of the accident were adverse because the rain was turning to snow, and that the accident occurred at an "extreme curve" in the roadway. The

evidence also indicated, however, that Pigg drove his tractor trailer while in an intoxicated state.

In *Commonwealth v. Dorazio*, 365 Pa. 291, 74 A.2d 125 (1950), our supreme court found that there was sufficient evidence from which a jury could find beyond a reasonable doubt that appellant, formerly a prize fighter, committed second-degree murder (now third-degree murder) where the victim died following appellant's "unjustified, unprovoked, brutal, and persistent attack upon deceased." *Id.*, 365 Pa. at 302, 74 A.2d at 131. In *Dorazio* the court dismissed appellant's argument that the facts did not demonstrate the malice necessary to support his conviction, stating:

> In general, it has been held that where the assault is not committed with a deadly weapon, the intent must be clearly felonious, or the death will be subject only to the charge of manslaughter. The presumption arising from the character of the instrument of violence, is not conclusive in either way, but where such weapons are used as do not usually kill, the deadly intent ought to be left in no doubt.... [W]here the weapon or implement used is not one likely to kill or to maim, the killing is held to be manslaughter, unless there is an actual intent which shows a felonious purpose.

*Id.*, 365 Pa. at 300, 74 A.2d at 129–30. The court then stated that the question of whether malice could be implied from the use of appellant's fists was dependent upon the circumstances of the case and thus considered "the size of the assailant, the manner in which the fists [were] used, the ferocity of the attack and its duration and the provocation." *Id.*, 365 Pa. at 300, 74 A.2d at 130. By finding the evidence sufficient to sustain a conviction of second-degree murder, the court found that the fists of the former prize fighter had been used with the intent that they have a lethal effect.

██ Here, assuming that an eighteen-wheeled tractor trailer is an instrument not likely to kill or maim, the killing would be held to be manslaughter unless there was an actual intent which shows a felonious purpose. *See Dorazio, supra.* Moreover, whether malice can be inferred from

the use of the tractor trailer is dependent upon the circumstances of this case. *See id.* We find that Pigg's operation of an eighteen-wheeled tractor trailer down a narrow road while in an intoxicated state is analogous to the boxer's use of his fists in *Dorazio*, and is therefore sufficient to give rise to an inference of malice. Prior to the fatal accident, Pigg drove several other vehicles off the road and ignored a fellow driver's plea to stop driving. On these facts, there can be no question that Pigg knew the danger he posed to others, yet willfully pursued a course of conduct that continued to subject them to that danger. As was stated by the trial court:

> [Pigg] drunkenly drove [a]n instrumentality that would have made ravaging Vikings green with envy. No battering ram in ancient history could match the lethality or destructive force of a large truck on a relatively narrow road. His wake was filled with incidental flotsam pointing to a stubborn persistence to get down the road whatever the consequences. There were no weather or traffic conditions, nothing which required [Pigg] to continue driving, to explain the tragedy.

Accordingly, we find that the evidence of Pigg's conduct was sufficient to demonstrate the wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty that constitute the requisite element of malice. Therefore, the evidence was sufficient to sustain the two third-degree murder convictions.

Next, Pigg asserts that when the trial court responded to the jury's request for clarification of the definition of malice it gave incorrect instructions. Pigg argues that as a result the jury did not know whether to use the definition of malice which the trial court initially gave to the jury or the subsequent instructions given by the trial court in response to the jury's requests for clarification. The alleged error to which Pigg refers lies in the trial court's use of the word "or" instead of "and" when listing the elements of malice. Additionally, Pigg contends that the trial court's instruc-

tions concerning "recklessness" as an element of malice were vague, imprecise and misleading.

Our review of the record reveals that defense counsel made no objection to the jury charge. At the conclusion of the charge, Judge Spicer asked if counsel had anything to add and defense counsel responded that he did not. During their deliberations the jury returned with a question for Judge Spicer regarding the concepts of malice and recklessness as they apply to third-degree murder and involuntary manslaughter. Judge Spicer responded to their question and at the conclusion of his explanation once again asked counsel if they had anything to add. At this time defense counsel stated that he thought that the jury was still confused as to those concepts and asked Judge Spicer to repeat the malice definition. After Judge Spicer complied with this request, defense counsel said that he was satisfied with the charge. Thereafter, the jury requested that the trial court explain malice as it pertains to recklessness in third-degree murder and to explain the degrees of recklessness and consciousness. Judge Spicer complied with this request. Defense counsel then asked that the malice definition be reviewed again and Judge Spicer repeated the definition. Thereafter, defense counsel did not place any objection on the record. Because counsel did not raise a specific objection, on the record, to the trial court's clarified charge we find that Pigg has failed to preserve this issue for our review. *See generally* Pa.R.A.P. 302(b).[1]

Next, Pigg alleges that the trial court erred in denying his claim that trial counsel was ineffective in failing to object to the testimony of Sharon Payne. Pigg asserts that Payne's testimony was inadmissible because it introduced evidence of prior criminal conduct as substantive evidence of his guilt of the present charges. The prior criminal conduct referred to by Pigg is his reckless driving

---

1. Although attorney Teeter filed supplemental post-trial motions alleging the ambiguity of the trial court's charge, such motions will not preserve a challenge to the charge which has not first been raised by objection in open court.

as witnessed by Sharon Payne immediately before his accident with Small.

To support a finding of ineffective assistance of counsel, the appellant must show that: (1) his underlying claim is of arguable merit; (2) counsel lacked any reasonable basis for his actions or inactions; and (3) he was prejudiced by counsel's actions or inactions. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Commonwealth v. Parker*, 387 Pa.Super. 415, 564 A.2d 246, 250 (1989). Evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is not used merely to show that the defendant is a person of bad character. *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988). One such "special circumstance" exists where the evidence sought to be used was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. *Id.*, 518 Pa. at 303, 543 A.2d at 497. In such an instance, the evidence is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *Id.* (quoting McCormick, *Evidence*, § 190 (1972 2d ed.)).

Sharon Payne testified about facts which occurred immediately prior to the accident. Clearly, this testimony was material in that it completed the story surrounding the accident and enabled the jury to determine Pigg's mental state directly before the accident. As the evidence was clearly admissible and objection to it would have been futile, Pigg's claim of attorney Wolfe's ineffectiveness must fail. Trial counsel will not be deemed ineffective for failure to raise a meritless claim. *See Parker*, 387 Pa.Super. at 423, 564 A.2d at 250.

■ Finally, Pigg contends that the homicide by vehicle while driving under the influence convictions should have merged with the third-degree murder convictions. Pigg also asserts that the trial court erred in imposing consecutive sentences on the two charges of homicide by vehicle

while driving under the influence. Pigg was sentenced as follows: on counts 1 and 2, murder in the third degree, Pigg was required to pay the costs of the proceeding and to undergo imprisonment in a State Correctional Institution for concurrent periods of not less than 10 years nor more than 20 years to be effective and to commence as of April 5, 1987; on count 7, homicide by vehicle while driving under the influence, Pigg was sentenced to a State Correctional Institution for a period of not less than 3 years nor more than 7 years to begin and to be effective as of April 5, 1987; and on count 8, homicide by vehicle while driving under the influence, Pigg was sentenced to a State Correctional Institution for a period of not less than 3 years nor more than 7 years to be served consecutively to the sentence imposed on count 7. The sentences on the homicide by vehicle while driving under the influence convictions were to be served concurrently with the sentences imposed on the third-degree murder convictions.

We will first evaluate Pigg's claim that his convictions of homicide by vehicle while driving under the influence should have merged with his convictions for third-degree murder.[2] Recently in *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1988), our supreme court overruled in part *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987), *cert. denied* 487 U.S. 1208, 108 S.Ct. 2852, 101 L.Ed.2d 889 (1988), which had set forth a test for determining when merger was appropriate. The *Michael Williams* test focused on whether "the crimes necessarily involved one another and whether they caused more than one injury to the Commonwealth." *Leon Williams*, 521 Pa. at 559, 559 A.2d at 27 *citing Michael Williams*, 514 Pa. at 124, 522 A.2d at 1095; *see generally Commonwealth v. Burdge*, 386 Pa.Super. 194, 562 A.2d 864 (1989) (discussion of recent supreme court decisions regarding merger of sentences).

---

**2.** Pigg did not file a motion for reconsideration of sentence. However, the legality of multiple sentences, based on a claim that the convictions should have merged for sentencing, is not waived by the failure to raise it before the trial court. *Commonwealth v. Campbell,* 351 Pa.Super. 56, 505 A.2d 262 (1986), *alloc. denied* 517 Pa. 602, 536 A.2d 1327 (1987).

In *Leon Williams,* the supreme court modified the traditional merger analysis set forth in *Michael Williams* by stating that "except for lesser included offenses, the doctrine of merger based on whether the Commonwealth has an interest in prosecuting a criminal defendant for more than one crime is hereby abrogated." *Leon Williams,* 521 Pa. at 563, 559 A.2d at 29; *see also Commonwealth v. Perdue,* 387 Pa.Super. 473, 564 A.2d 489 (1989) (court applied *Leon Williams,* determined that criminal mischief and institutional vandalism do not share the same elements, stated that the facts which established the commission of institutional vandalism also served as the basis for the conviction of criminal mischief, and concluded that under *Leon Williams* that the crimes did not merge). In *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989), the companion case to *Leon Williams,* the supreme court discussed its holding in *Leon Williams.* The court stated that "[I]n *Leon Williams,* we held that where the same facts are used to support convictions for crimes having different elements, the crimes *do not* merge for sentencing purposes, unless the same facts support convictions of lesser included offenses." *Weakland,* 521 Pa. at 363, 555 A.2d at 1233 (emphasis added).

Applying the holding in *Leon Williams* to the present case, we first must determine whether third-degree murder and homicide by vehicle while driving under the influence share the same elements. *See generally Perdue, supra.* Murder is defined as:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b) Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c) Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

\* \* \* \* \* \*

18 Pa.C.S. § 2502.

Homicide by vehicle while driving under the influence is defined as follows:

**§ 3735. Homicide by vehicle while driving under the influence.**

**(a) Offense defined.**—Any person who unintentionally causes the death of another person as the direct result of a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years.

\* \* \* \* \* \*

75 Pa.C.S.A. § 3735.

The elements of third-degree murder have been developed by case law. Third-degree murder is a killing done with legal malice but without the specific intent to kill required in first-degree murder. *Commonwealth v. Pitts*, 486 Pa. 212, 404 A.2d 1305 (1979). "Malice express or implied is the criteria and absolutely the essential ingredient of murder." *Commonwealth v. Commander*, 436 Pa. 532, 537, 260 A.2d 773, 776 (1970); *see also Commonwealth v. Dennis*, 506 Pa. 460, 461, 485 A.2d 1097, 1098 (1984); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 456 A.2d 171 (1983). A comparison of the elements of the two offenses demonstrates that third-degree murder consists of a killing committed with malice, while homicide by vehicle while driving under the influence requires that the killing be a direct result of a violation of 75 Pa.C.S.A. § 3731, and that the defendant be convicted of violating section 3731. Thus, it is apparent that the two crimes do not share the same elements.

It is true that the facts which established the grounds for the third-degree murder convictions in this case also served as the basis for the homicide by vehicle while driving under the influence convictions. However, under *Leon Williams*, if the same facts are used to support convictions for crimes having different elements, then the crimes do not merge *unless* the same facts support convictions of lesser included offenses. *Leon Williams*, 521 Pa. at 563, 559 A.2d at 29. Thus, according to *Leon Williams* these crimes do not merge *unless* one is a lesser included offense of the other.

"[A]n offense is a lesser included offense if each and every element of the lesser offense is necessarily an element of the greater." *Commonwealth v. Wilds*, 240 Pa.Super. 278, 287, 362 A.2d 273, 278 (1976). Because each and every element of homicide by vehicle while driving under the influence is not necessarily an element of third-degree murder, we conclude that the crimes do not merge for sentencing purposes.[3]

With respect to Pigg's remaining claim regarding the imposition of consecutive sentences, we note that Pigg has failed to file a motion for reconsideration of sentence and hence any claims relating to the discretionary aspects of sentencing are waived. *See generally Commonwealth v.*

**3.** We have applied the *Leon Williams* test to the present case because the issue here is whether the same evidence supported convictions of crimes having different elements. As stated in the text, the holding in *Leon Williams* is where the same facts are used to support convictions for crimes having different elements, the crimes do not merge unless the crimes are lesser included offenses. *Leon Williams*, 521 Pa. at 563, 559 A.2d at 29. In the present case the evidence of Pigg's drinking supported his conviction of homicide by vehicle while driving under the influence by establishing the grounds for the "violation of section 3731" element of section 3735. The evidence of Pigg's drinking also supported his conviction of third-degree murder by establishing part of the conduct that gave rise to the inference of malice. Thus, the same evidence supported convictions of crimes having different elements.

This case does not present an issue under *Weakland*, decided by the Supreme Court as a companion case to *Leon Williams*. In *Weakland*, the question was "whether facts in evidence *additional* to those facts establishing aggravated assault, should be used to satisfy the threat of force requirement of kidnapping." *Weakland*, 521 Pa. at 363, 555 A.2d at 1233.

*Smith,* 375 Pa.Super. 419, 544 A.2d 991 (1988) (en banc). Accordingly, we will not address this issue.

Judgment of sentence affirmed.