J-A06037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PHILLIP MULLIN | |
| Appellant | No. 535 EDA 2014 |

Appeal from the Judgment of Sentence January 17, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000115-2012

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED MARCH 31, 2015**

Appellant Phillip Mullin appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following Appellant's jury trial convictions of aggravated assault by causing serious bodily injury, aggravated assault with a firearm, possessing instruments of crime, firearms not to be carried without a license, recklessly endangering another person ("REAP"), and resisting arrest.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On December 23, 2011, Appellant, Sean McGonagle ("Victim") and Dennis McGonagle ("Victim's Father") were at the Black Horse Tavern in

---

[1] 18 Pa.C.S. §§ 2702(a)(1), (4), 907(b), 6106(a)(1), 2705, 5104, respectively.

Montgomery County. N.T., 2/12/13, at 37, 111. All three were regulars at the bar and acquaintances. *Id.* at 111. A verbal altercation ensued between Appellant and Victim's Father in which Appellant stated Victim's Father, Victim, and Victim's girlfriend were all crazy, that Victim was a "punk and a pussy," and that he would "kick [Victim's] ass" and "would have stuck a knife in [Victim's] heart." *Id.* at 112. Victim's Father shoved Appellant and bartenders stopped serving both of them and broke up the fight. *Id.* at 113, 114. They left separately, Appellant without paying his tab. *Id.* at 83, 87-88. Victim stayed at the bar. *Id.* 114. After getting a call from the cook to come pay his tab, Appellant returned. *Id.* at 104, 134. Appellant tried to get a seat close to Victim, but customers intervened, and the bartender would not serve Appellant. *Id.* at 86. Eventually, Appellant sat next to Victim and offered to buy him a drink, which Victim accepted. *Id.*

When Victim left to walk his friend to her car, Appellant followed him in an "abrupt and hurried" manner. N.T., 2/12/13, at 149, 163. In the parking lot, Appellant tested the taser that was in his pocket and pointed it at Victim and his friend. *Id.* at 151. After the friend departed, Appellant pointed the taser at Victim's chest. *Id.* at 166. Victim indicated that if Appellant tased him, he would "kick [Appellant's] ass." *Id.* Appellant shot the taser and the prongs hit Victim's leg, but the electrical current did not deploy. *Id.* at 152. Victim began punching Appellant repeatedly and both men fell on the ground with Victim on top. *Id.* at 153. During the fight, Appellant held the taser in

one hand and kept the other in his pocket which held the .36 caliber gun. *Id.* at 250. Appellant shot Victim in the chest. *Id.* at 153.

An off-duty emergency medical technician who was in the parking lot tended to Victim, who was soon rushed to the hospital and is now paraplegic. Police apprehended Appellant from his home after a SWAT team intervened and administered 18 canisters of tear gas. All of this information was submitted to a jury in the form of eyewitness testimony and video surveillance.

On February 14, 2013, the jury convicted Appellant of the aforementioned charges. On January 15, 2014, the court imposed consecutive sentences of: 7-14 years' incarceration for aggravated assault serious bodily injury; 1-2 years' incarceration for possessing instruments of crime; 2-4 years' incarceration for firearms not to be carried without a license; 1-2 years' incarceration for REAP; and 6 months to a year of incarceration for resisting arrest. Appellant filed a timely notice of appeal on February 12, 2014 and a Pa.R.A.P. 1925(b) statement on March 20, 2014.

Appellant raises the following issues for our review:

I. WAS THE EVIDENCE PRESENTED AT TRIAL SUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] WAS GUILTY OF AGGRAVATED ASSAULT, 18 PA.C.S. § 2702(A)(1), WHERE THE APPELLANT DID NOT ACT WITH A MALICIOUS STATE OF MIND BECAUSE HE SHOT THE VICTIM TO DEFEND HIMSELF?

II. SHOULD [APPELLANT] BE SENTENCED ANEW BECAUSE [APPELLANT] WAS NOT PROVIDED WITH THE OPPORTUNITY OF ALLOCUTION PRIOR TO SENTENCING IN THE LOWER COURT?

Appellant's Brief at 3.

In his first issue, Appellant argues the Commonwealth failed to present sufficient evidence to prove Appellant was guilty of aggravated assault. Specifically, Appellant contends the Commonwealth did not prove he acted with malice. He also claims the Commonwealth failed to prove he did not act in self-defense. In his reply brief, Appellant argues that the Commonwealth's Brief inaccurately claims the Victim's punches slowed down before Appellant shot him. Further, he complains that the court improperly determined malice could be inferred by Appellant's pointing a gun at a vital part of Victim's body because he only pointed a taser at a vital part of Victim's body. Appellant is incorrect. His arguments ignore the fact that he shot Victim in the chest with an actual gun.

In reviewing the sufficiency of the evidence, the standard we apply is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact

while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Aggravated assault is defined by statute as follows:

**(a) Offense defined.--**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702. Serious bodily injury is also defined by statute:

**§ 2301. Definitions**

\* \* \*

**"Serious bodily injury."** Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

18 Pa.C.S. § 2301.

This Court observes:

As stated in the statutory definition, recklessness manifesting "extreme indifference to the value of human life" must be proven to establish aggravated assault. The corresponding *mens rea* for this standard is "malice", defined in **Commonwealth v. Pigg**, 571 A.2d 438, 441 ([Pa.Super.]1990), *appeal denied,* 581 A.2d 571 ([Pa.]1990) (quoting **Commonwealth v. Drum**, 58 Pa. 9, 15 (1868)), as "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind

- 5 -

regardless of social duty, although a particular person may not be intended to be injured."

***Commonwealth v. McHale***, 858 A.2d 1209, 1212-13 ([Pa.Super.]2004).

"[I]t is well established in Pennsylvania that a fact finder may infer malice and a specific intent to kill from the use of a deadly weapon upon a vital part of the victim's body." ***Commonwealth v. Cruz***, 919 A.2d 279, 281 (Pa.Super.2007), *appeal denied*, 928 A.2d 1289 (Pa.2007).

To establish a claim of self-defense, a defendant must prove three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." ***Commonwealth v. Mouzon***, 53 A.3d 738, 740-41 (Pa.2012) (internal footnotes omitted). Although the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense, "before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding." ***Id.*** at 741.

"To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant used more force than reasonably necessary to protect against death or

serious bodily injury." ***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa.Super.2014) (internal citations and emphasis omitted).

Here, Appellant pointed a deadly weapon at a vital part of Victim and shot him in the chest. This would allow a fact-finder to find the requisite malice for aggravated assault. ***See Cruz, supra.*** Further, Appellant was not free from fault in provoking the altercation that led to the offense. Appellant followed Victim into the parking lot and shot him with a taser before Victim punched him. Then, by shooting Victim, Appellant used more force than reasonably necessary to protect himself. His actions negate his claim of self-defense. ***See Smith, supra.***

The trial court reasoned:

> [T]here was clearly sufficient evidence for the jury to conclude that [Appellant] acted recklessly under circumstances manifesting an extreme indifference to human life. The evidence showed that [Appellant] instigated a fight with [Victim and Victim's Father] in the beginning of the evening, and then returned to the tavern with a taser and a .36 caliber weapon. Upon his return, [Appellant] was intent on having further contact with [Victim], but [Victim] ignored [Appellant]. When [Victim] exited the tavern, [Appellant] raced outside to the parking lot, concealed weapons in tow, in order to finish the altercation that he started earlier that evening. [Appellant] shot the taser at [Victim's] chest and hit [Victim's] leg, however, the electrical current malfunctioned. [Victim] fought back and began punching [Appellant]. [Appellant] did not cover up or shield himself. Rather, as demonstrated by the surveillance video, the entire time [Appellant] kept one hand on his taser and the other in the pocket with the gun. As the men struggled, [Appellant] pulled his gun from his pocket and shot [Victim] in the chest. The evidence was more than

sufficient to establish malice making [Appellant's] initial appellate claim meritless.

Trial Court Opinion, filed August 26, 2014, at 9-10.  We agree with the trial court that, when viewing all evidence in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact-finder to find every element of aggravated assault beyond a reasonable doubt.

In his second issue, Appellant claims his right to allocution was not honored during sentencing, and he should be granted a new sentencing hearing.  His reply brief stresses that he did not have the right to allocution *prior* to sentencing.

The Pennsylvania Rules of Criminal Procedure provide, in relevant part:

> **Rule 704. Procedure at Time of Sentencing**
>
> \*   \*   \*
>
> **(C) Sentencing Proceeding.**
>
> (1) At the time of sentencing, the judge shall afford the defendant the opportunity to make a statement in his or her behalf and shall afford counsel for both parties the opportunity to present information and argument relative to sentencing.

Pa.R.Crim.P. 704.

This Court recognizes that a defendant's right of allocution is an important right:

> Our Supreme Court has noted that a defendant's right to personally address the court prior to sentencing, and thereby plead for mercy, is of paramount importance and

has rejected the proposition that a defendant must show prejudice because of the denial of the right. ***Commonwealth v. Thomas***, 553 A.2d 918, 919 ([Pa.]1989). As the ***Thomas*** Court stated: "What effect the exercise of the right of allocution might have on the subjective process of sentencing can never be known with such certainty that a reviewing court can conclude there was no prejudice in its absence." ***Id.*** The Court interpreted then-Rule 1405, now renumbered at Rule 704, as requiring the sentencing court to inform the defendant of his right to speak prior to sentencing, and where the trial court erroneously fails to so inform the defendant of the right, a resentencing hearing is required. ***Id.; see also Commonwealth v. Hague***, 840 A.2d 1018, 1019 (Pa.Super.2003) ("The failure to afford a criminal defendant the right to address the court prior to sentencing requires remand to allow allocution prior to resentencing.")

***Commonwealth v. Hardy***, 99 A.3d 577, 580 (Pa.Super.2014).

The trial court asked if Appellant would like to exercise his right to allocution. Counsel stated they had discussed it briefly, and "[g]iven the possibility of further litigation, I don't know if it would really be in his interest." N.T., 1/16/14, at 65. The court then listened to argument and proceeded to sentencing, which finished at 3:50. At 4:15, the court realized Appellant had not specifically addressed allocution on the record and discussed it with Appellant and counsel. Appellant then stated that he "did not agree" to counsel's advice, but that he did not wish to speak "at this point." ***Id.*** at 86. The court explained his right to allocution, then stated, "you can say whatever you want to say that you think I need to know and then I will take a look at my sentence and re-examine it in light of what you have told me, okay." ***Id.*** at 87. At this point, Appellant told the court, "you

said I don't feel emotion. I definitely feel emotion. I am completely stressed out right now, all right. When it comes to the matter with the gun, I bought that from a legal vendor who legally sells guns. So I didn't buy it illegally. When it comes to the matters of [Victim] – I'm sorry – I'm not too good with words… You know, I never meant to cause that kind of damage to him which I would hope everybody would know, but obviously they didn't. You know, I would never put my hands on anybody that didn't put their hands on me first. You know, I will react or retaliate, but I will not – I never start confrontations. That's just not me. That's all I want to say." *Id.* at 89. The court said, "Thank you for presenting your case on the record in light of your sentencing. The matters that you did raise, I did consider actually most of those arguments when I did sentence you… The video in this case was pretty clear to me. It showed you pursuing [Victim] pretty vividly, pretty clearly directly from the bar and going after him and then you returned with the gun and the taser. So what I'm going to do in light of that, I'm going to keep the sentence the same as I gave earlier. Okay?" *Id.* at 89-90.

The trial court reasoned:

> Despite [Appellant's] indecision on the allocution issue, the record clearly demonstrates that the court ensured that [Appellant] exercised his right to allocution. The court then considered this information prior to entry of final sentence and [Appellant] suffered no prejudice.

Trial Court Opinion at 16.

We agree with the trial court that Appellant exercised his right to allocution.[2]

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2015

---

[2] Moreover, to the extent Appellant's allocution claim raises a question of the effectiveness of counsel, such claims shall not be raised on direct appeal, but shall be reserved for collateral review. ***See Commonwealth v. Holmes***, 79 A.3d 562, 566 (Pa.2013) (holding, "as a general rule, claims of ineffective assistance of counsel will not be entertained on direct appeal.").