J-S06011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                     :          PENNSYLVANIA
                     :
        v.              :
                     :
                     :
AARON JACKSON           :
                     :
         Appellant       :    No. 3844 EDA 2016

Appeal from the Judgment of Sentence November 9, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005864-2015

BEFORE:  BOWES, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:           **FILED JULY 17, 2018**

Aaron Jackson appeals from the judgment of sentence of six to twelve years imprisonment imposed following his conviction of third-degree murder in the shooting death of Robert Dewees.  We affirm.

The trial court set forth the relevant facts as follows:

> Mr. Anthony Capetola [testified that he] rented 1113 Hancock Street in Chester.  . . . He knew the victim for 14 years and described him as his best friend.  Mr. Capetola rented a room in the house to Ms. [Maria] Occhiolini.  On [September 17, 2014,] the day of the shooting[,] the victim was at Mr. Capetola's house. . . . Ms. Occhiolini[,] some of her girlfriends [, including Melissa Shanahan, and Appellant were] there. . . . Mr. Capetola knew [Appellant] as a friend of Ms. Occhiolini. [Appellant] had been hanging around the house for a week or so before the shooting. . . . Mr. Capetola . . . heard arguing in the back room . . . about $600 and pills.  Mr. Capetola recognized two of the voices as belonging to the victim and [Appellant].  As he proceeded to the back room, the arguing stopped . . . At the time [Javier Rodriguez], [Appellant] and the victim passed by Mr. Capetola into the living room.  As the three men entered the living room Mr. Capetola heard a loud noise.  He . . . saw the

victim down on the ground with [Appellant's] hand around his legs. Mr. Capetola concluded [Appellant] had tackled the victim to the ground. Mr. Capetola went over to assist the victim. As Mr. Capetola picked up the victim he heard someone say "should I do it," and then he heard [Appellant] say "yes." Mr. Capetola spun around and was looking at Rodriguez's gun. At that time Rodriguez shot the victim in the chest.

Ms. Maria Occhiolini . . . [testified that on the] day before the shooting, . . . [she] . . . heard the victim mention that the next day he was getting his Percocet and Xanax prescriptions. [Appellant] told the victim he knew somebody that wanted to buy the prescriptions. The next day, the day of the shooting, . . . [Appellant] returned to Ms. Occhiolini's . . . house with . . . Rodriguez. . . . When the victim returned to the house he told Ms. Occhiolini he didn't feel comfortable selling Rodriguez any pills because he didn't know who he was. . . . Ms. Occhiolini then told Rodriguez and [Appellant] that the victim didn't want to do the transaction. . . . Ms. Occhiolini started to leave. [Appellant] walked in front of her like he was leaving to [sic]. Rodriguez came in between the two of them. Rodriguez put a .45 handgun to Ms. Occhiolini's chest and attempted to rob her. [Appellant] told Rodriguez that Ms. Occhiolini didn't have anything. Rodriguez told [Appellant] to detain Ms. Occhiolini so she couldn't call the police. Ms. Occhiolini heard Rodriguez say to [Appellant], "should I do this?" and [Appellant] reply "yes." . . . [Appellant] threw the victim onto the living room floor while Rodriguez was pointing the gun at him. . . . Ms. Occhiolini saw the victim in the living room on his back and both Rodriguez and [Appellant] on top of him trying to get him to release [a] Phillies backpack he was holding. Rodriguez proceeded to point the gun at the victim and shoot him. Rodriguez and [Appellant] then ran out of the front door with the Phillies back pack [sic].

[Appellant] testified [that] he was a drug runner for Mr. Capetola and Ms. Occhiolini. He would bring people to their residence to buy drugs and would get a commission for doing so. He denied having any knowledge that Rodriguez would rob and shoot the victim. [Appellant] testified he knew the victim had a prescription for Percocet and Xanax. . . . [Appellant] admitted he brought Rodriguez to the residence to buy drugs, [and that he knew there was a possibility that Rodriguez would get the drugs from the victim by force (i.e., "the strong arm option").] [Appellant] denied [Mr.] Capetola['s] and [Ms.] Occhiolini['s]

version of his involvement in the victim's robbery and shooting. [He claimed] Rodriguez acted alone without [Appellant's] prior knowledge or participation.

Trial Court Opinion, 3/16/17, at 1-8 (references to the record and footnote omitted, formatting changed).

Appellant was arrested and charged with murder of the second degree, murder of the third degree, robbery, and criminal conspiracy for his alleged participation in Dewees's murder. Following a jury trial, Appellant was convicted of murder of the third degree. On November 9, 2016, the trial court sentenced him to six to twelve years incarceration. Appellant filed a post-sentence motion which the trial court denied. Appellant then filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises the following issues for our review:

1. Whether the evidence presented by the Commonwealth at trial was insufficient to convict the Appellant beyond a reasonable doubt of murder of the third degree where the evidence was clear that Appellant was not the shooter and did not cause the death of the victim, and [the] jury found Appellant not guilty of 2nd[-]degree murder, criminal conspiracy to commit 2nd[-]degree murder and 3rd[-]degree murder[,] and robbery?

2. Whether the trial court erred in granting the Commonwealth's motion *in limine* prior to trial which precluded the Appellant from using the principal Commonwealth witness'[s] criminal record for impeachment purposes, specifically the arrest and conviction of [Mr.] Capetola for drugs, and as such was an abuse of the court's discretion and denied the Appellant a fair trial?

3. Whether the trial court erred in precluding the Appellant from using the principal Commonwealth witness'[s] criminal record for impeachment purposes, specifically the arrest and conviction of [Mr.] Capetola for drugs, and as such was an abuse of discretion and denied Appellant a fair trial, where Commonwealth's witness testified at trial that he did not have a criminal record, but that Appellant was a criminal?

4. Whether the trial court erred in failing to grant the Appellant's various motions for mistrial raised by his counsel during the jury trial?

Appellant's brief at 5 (unnecessary capitalization omitted).

In his first claim, Appellant challenges to the sufficiency of the evidence supporting his conviction. As a preliminary matter, when challenging the sufficiency of the evidence on appeal, the "[a]ppellant's [court-ordered Pa.R.A.P. 1925(b) concise] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009). If the appellant fails to conform to the specificity requirement, the claim is waived. *Id*.

In the present case, Appellant's 1925(b) statement merely asserts that "[t]he evidence presented by the Commonwealth at trial was insufficient to convict [Appellant] beyond a reasonable doubt of murder of the third degree where the evidence was clear that [Appellant] was not the shooter and did not cause the death of the victim, and jury found him not guilty of 2nd[-]degree murder, criminal conspiracy to commit 2nd and 3rd[-]degree murder[,] and robbery." Concise Statement, 12/16/16, at unnumbered 3.

The trial court determined that Appellant's statement was inadequate because he failed to specify which element of the crime that the Commonwealth had allegedly failed to prove. *See* Trial Court Opinion, 3/16/17, at 11. We agree with the trial court that Appellant's statement of his sufficiency claim was vague insofar as it did not specifically challenge the evidence relating to any element of third-degree murder. However, as the trial court addressed the claim, we decline to find waiver on this basis.

Our standard of review of a sufficiency claim is well-settled:

[W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa.Super. 2013) (citations and quotation marks omitted).

Additionally,

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so

long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Tukhi***, 149 A.3d 881, 886-87 (Pa.Super. 2016) (citation omitted).

Murder is defined by statute as follows:

**(a)** **Murder of the first degree**.--A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b)** **Murder of the second degree**.--A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c)** **Murder of the third degree**.--All other kinds of murder shall be murder of the third degree.  Murder of the third degree is a felony of the first degree.

18 Pa.C.S. § 2502.

A person may be convicted of third-degree murder where the murder is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought.  Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

***Commonwealth v. Pigg***, 571 A.2d 438, 441-42 (Pa.Super. 1990) (internal quotations and citations omitted).  "The elements of third[-]degree murder, as developed by case law, are a killing done with legal malice but without specific intent to kill required in first[-]degree murder.  Malice is the essential element of third[-]degree murder, and is the distinguishing factor

between murder and manslaughter." ***Commonwealth v. Cruz-Centeno***,

668 A.2d 536, 539 (Pa.Super. 1995).

With respect to accomplice liability:

> A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S. § 306; ***Commonwealth v. Spotz***, . . . 716 A.2d 580, 585 ([Pa.] 1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004) (some

citations omitted).

Here, Appellant contends that the Commonwealth failed to prove that

he acted with the requisite level of malice necessary to support a conviction

of third-degree murder as an accomplice. He claims that he accompanied

Rodriguez to Mr. Capetola's home solely to purchase drugs, and there is no

evidence that Appellant planned to injure or kill Dewees, or that he knew

that Rodriguez possessed a firearm. According to Appellant, he did not

solicit, aid or encourage Rodriguez in the shooting death of Dewees.

Viewing the evidence adduced at trial in the light most favorable to the Commonwealth, as the verdict winner, we conclude that a reasonable juror could find that Appellant intended to aid, and actively aided, Rodriguez, who shot and killed Dewees. Appellant testified that he brought Rodriguez to the residence to buy drugs, and that he knew there was a possibility that Rodriguez would get the drugs from the victim by force (*i.e.*, "the strong arm option"). N.T. Trial, 8/4/16, at 141-42. Appellant was also aware that Rodriguez had a gun because he saw Rodriguez use it to try to rob Ms. Occhiolini. N.T. Trial, 8/3/16, at 93. Additionally, Mr. Capetola testified that Appellant tackled Dewees to the ground and was holding his legs when someone asked "should I do it?" to which Appellant responded "yes" immediately before Rodriguez shot Dewees in the chest. *Id*. at 13-15. Ms. Occhiolini also testified that Appellant threw Dewees onto the living room floor while Rodriguez was pointing the gun at him, and that both Rodriguez and Appellant were on top of Dewees trying to get him to release the Phillies backpack he was holding. *Id*. at 96-98. Ms. Occhiolini further testified that she heard Rodriguez ask Appellant just prior to the shooting, "should I do this?" and Appellant reply "yes." *Id*. at 94.

Based on these facts, we find the Commonwealth presented sufficient evidence to prove that Appellant acted with the requisite malice to support his third-degree murder conviction as an accomplice by showing a "wickedness of disposition, hardness of heart, cruelty, recklessness of

consequences, and a mind regardless of social duty." ***Pigg***, ***supra*** at 441-42. Accordingly, we conclude that Appellant's first issue merits no relief.

In Appellant's second and third issues, he challenges the trial court's order granting the Commonwealth's motion *in limine* to preclude the use of Mr. Capetola's criminal record for impeachment purposes. In reviewing the grant or denial of motions *in limine*, this Court applies an abuse of discretion standard of review. ***See Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa.Super. 2013). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Alicia***, 92 A.3d 753, 760 (Pa. 2014).

Additionally, this Court has stated the well-established standard of review for admission-of-evidence claims as follows:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, [this Court's] standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012).

First, Appellant claims the trial court erred in precluding the use of Mr. Capetola's criminal record to impeach him. According to Appellant, seven months after the shooting, Mr. Capetola entered a negotiated guilty plea to

- 9 -

possession of a controlled substance in exchange for one year reporting probation. Appellant contends that Mr. Capetola may have been motivated by his negotiated plea to fabricate a claim that Appellant encouraged Rodriguez to shoot Dewees. Appellant argues that the trial court abused its discretion in granting the Commonwealth's motion *in limine* to preclude the introduction of Mr. Capetola's conviction because the jury should have been appraised of the details of Mr. Capetola's plea agreement for impeachment purposes.

Pennsylvania Rule of Evidence 609(a) provides that: "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement." It is the burden of the party seeking to introduce the crimes to demonstrate the crimes at issue represent *crimen falsi*. **See Commonwealth v. Davis**, 17 A.3d 390, 396 (Pa.Super. 2011).

Here, Mr. Capetola's conviction for possession of a controlled substance did not involve dishonesty or a false statement, and is not a *crimen falsi* conviction admissible under Pa.R.E. 609. **See id**. at 399 (observing that possession of a controlled substance is not *crimen falsi*). Thus, the trial court had the discretion to exclude it from evidence at trial.

Moreover, the record reveals the trial court conducted two hearings on the Commonwealth's motion *in limine* wherein it was revealed that, during

the criminal proceedings related to his drug charge, Mr. Capetola did not reveal to either his defense counsel or to the assistant district attorney that he had been a witness to a murder, and, consequently, did not receive any benefit from the Commonwealth for his plea.  N.T. Pretrial, 7/25/16, at 4-6. Thus, at the time of Mr. Capetola's plea agreement, the Commonwealth was unaware that he was a potential witness in an upcoming murder trial. Further, Mr. Capetola served the entirety of his probationary sentence before Appellant's trial commenced.  N.T. Pretrial, 8/1/16, at 9-10; N.T. Pretrial, 7/25/16, at 6.  Accordingly, we discern no abuse of discretion or error of law by the trial court, and conclude that Appellant's second claim warrants no relief.

Appellant next claims that the trial court abused its discretion when it precluded the introduction of Mr. Capetola's conviction to impeach his testimony regarding his criminal record.  According to Appellant, Mr. Capetola lied about his criminal history when he told the jury that "I don't sell drugs, I never did.  I don't have a record selling drugs or whatever, buying drugs whatever."  Appellant's brief at 18 (citing N.T. Trial, 8/3/16, at 70-75).

Appellant's claim lacks merit.  Although Appellant attempts to characterize Mr. Capetola's testimony as perjured, the record reveals it was not.  As Appellant points out, Mr. Capetola pled guilty to **possession** of controlled substance.  Therefore, Mr. Capetola truthfully told the jury that he

had no criminal record for the **sale** or **purchase** of drugs. Moreover, Appellant was permitted to question Mr. Capetola at trial regarding his drug use, and elicit his testimony that he had used drugs in the past. *See* N.T., 8/3/16, at 63. Thus, we discern no abuse of discretion or error of law by the trial court, and conclude that Appellant's third claim is meritless.

In his final claim, Appellant contends that the trial court erred by denying his three motions for mistrial. We address each motion separately, mindful of our standard of review of a court's denial of a request for mistrial:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

***Commonwealth v. Tejeda***, 834 A.2d 619, 623 (Pa.Super. 2003) (internal citations and footnote omitted).

According to Appellant, the trial court erred by denying his first motion for mistrial following Detective William Wright's trial testimony that Appellant and Rodriguez agreed to obtain Percocet pills from Dewees either by sale or, if necessary, through a "strong arm robbery." N.T. Trial, 8/4/16, at 57, 60. Specifically, the detective stated that "[Appellant] said if they could not get them and pay for them there would be a possibility they could strong arm them. So, there was an agreement they could get them either way. Strong arm I mean forcibly taking them from him." *Id*. at 57. Appellant claims

that Detective Wright "in essence offered his opinion that Appellant and [Rodriguez] had entered into a conspiracy to rob [Dewees] of his narcotics." Appellant's brief at 22. Although Appellant concedes that he subsequently testified at trial regarding the strong arm robbery option, he nevertheless contends that he was prejudiced and denied a fair trial by the detective's "damning and prejudicial testimony." *Id*.

Notably, Appellant does not claim that Detective Wright's testimony was inadmissible. Rather, he summarily contends, without discussion of or citation to any relevant legal authority, that he was unfairly prejudiced by it. Without any developed discussion of why the trial court erred by considering Detective Wright's testimony as an admissible opinion by a lay witness, *see* Pa.R.E. 701,[1] Appellant has not demonstrated that the court's decision was an abuse of discretion. *See* Pa.R.A.P. 2119(a) (stating that the parties'

---

[1] Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701

briefs must include a discussion of each question raised on appeal and a "citation of authorities as are deemed pertinent.").

Moreover, the trial court determined that, even if it erred by not striking the detective's testimony, Appellant suffered no prejudice because he testified at trial that he voluntarily told police that he knew there was a possibility that Rodriguez would get the drugs from the victim by "strong arm." **See** Trial Court Opinion, 3/16/17, at 20; **see also** N.T., 8/4/16, at 141-42. As we discern no abuse of discretion by the trial court, Appellant's challenge to the trial court's denial of his first motion for mistrial warrants no relief.

Appellant next claims that the trial court erred by denying his motion for mistrial following Detective Wright's trial testimony that the jury should disregard Ms. Shanahan's post-incident statements because of his observations of her demeanor during police interviews. Appellant contends that the detective's statements invaded the province of the jury by "cast[ing] a cloud over the testimony and credibility of Ms. Shanahan," and thereby "wholly eviscerated" Appellant's right to a fair trial. Appellant's brief at 23.

The trial court determined that no mistrial was warranted as the detective testified to his personal observations of Ms. Shanahan's demeanor. **See** Trial Court Opinion, 3/16/17, at 18-19. We discern no abuse of discretion by the trial court. **See Commonwealth v. Boczkowski**, 846

A.2d 75, 97 (Pa. 2004) (holding that a lay person is permitted to testify as to personal observations of someone's demeanor, and to offer an opinion on matters falling within the realm of common knowledge experience and understanding); *see also* Pa.R.E. 602 (providing that a witness may testify to matters within his personal knowledge). Accordingly, Appellant's challenge to the trial court's denial of his second motion for mistrial warrants no relief.

Finally, Appellant argues that the trial court erred by denying his third motion for mistrial based on the Commonwealth's failure to provide the defense with a copy of Mr. Capetola's written statement to police following a photo array. According to Appellant, the Commonwealth "shockingly claimed that no statement was taken from [Mr.] Capetola coincident with the showing of the photo array." Appellant's brief at 24. Appellant claims that the Commonwealth destroyed or withheld the statement from the defense, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Commonwealth v. Cam Ly*, 980 A.2d 61 (Pa. 2009).

The trial court determined that no mistrial was warranted because no written statement was taken from Mr. Capetola following the photo array. *See* Trial Court Opinion, 3/16/17, at 18 (citing N.T. Trial, 8/3/16. At 70-75). Based on our review, we discern no abuse of discretion by the trial court. Appellant's claim is based on pure conjecture, whereas the trial court was presented with credible representations at trial that no written statement

was made by Mr. Capetola following the photo array. **See** N.T. Trial, 8/3/16. At 71, 74-75. Accordingly, Appellant's challenge to the trial court's denial of his third motion for mistrial based on a suspected **Brady** violation warrants no relief.

Judgment of sentence affirmed.

Judge Musmanno joins the memorandum

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/18