J-S90005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                               :                  PENNSYLVANIA
                                             :
                          v.                       :
                                           :
RAFPHIQUE GERALD                     :
                                           :
                      Appellant       :     No. 2621 EDA 2015

Appeal from the Judgment of Sentence July 21, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0014837-2012

BEFORE:  OTT, SOLANO, JENKINS, JJ.

MEMORANDUM BY OTT, J.:                       **FILED FEBRUARY 24, 2017**

Rafphique Gerald appeals from the judgment of sentence imposed July 21, 2015, in the Philadelphia County Court of Common Pleas.  The trial court sentenced Gerald to an aggregate term of 11½ to 23 months' imprisonment, followed by three years' probation, after the court, sitting without a jury, found him guilty of, *inter alia*, aggravated assault and conspiracy.[1]  On appeal, Gerald challenges the sufficiency and weight of the evidence

---

[1] **See** 18 Pa.C.S. §§ 2702(a) and 903, respectively.  Gerald's co-defendant, Kevyn Thomas, raises identical issues in his appeal docketed at 2618 EDA 2015. Although the co-defendants were represented by separate counsel at trial, they are represented by the same attorney on appeal, and have filed a consolidated brief.  Nevertheless, for ease of analysis, we have decided to address the appeals separately.

supporting his convictions. Specifically, he asserts his claim of (imperfect) defense of property negated the intent requirement for his convictions. For the reasons that follow, we affirm.

The facts underlying Gerald's arrest and conviction are aptly summarized by the trial court as follows:

> On November 29, 2012, Michael Yarnell, an employee of Jamison Towing (who tows abandoned vehicles for the City of Philadelphia) was dispatched to the area of 38th Street and Girard Avenue. When he arrived, he found the 1998 Ford Expedition listed on his paperwork for towing. Mr. Yarnell compared the abandonment and tow report he had received from Jamison to the vehicle he was sent to tow. It was a match so he loaded it onto the bed of the truck. Mr. Yarnell proceeded to the second location on his paperwork to retrieve a Chevy van at or near the 4200 block of Viola Street. Once the van was hooked up to the truck[,] Mr. Yarnell drove to an area near the 40th Street Bridge to put his towing lights on the van and to take pictures of both of the vehicles as required by his employer. As he was finishing taking pictures, a blue Buick pulled up behind the tow truck from Girard Avenue; two men got out of the Buick and started yelling and screaming "Get my fucking car down." Mr. Yarnell identified both [Gerald] and the co-defendant, [] Thomas, as the two men in the blue Buick. Mr. Yarnell was approximately 50 feet from the two men.

> The men were walking vigorously toward him and Mr. Yarnell tried to call the police and his office to no avail. Mr. Yarnell told the men that he had paperwork for the vehicles and he was going to get the paperwork from inside the truck. He also said he would use his 2-way radio to call headquarters. Mr. Yarnell [made] it inside his truck but was not able to use the radio because co-defendant Thomas said, "You're not calling fucking anybody." Co-defendant Thomas then grabbed Mr. Yarnell by his neck (squeezing his neck as he reached around) and shut the truck off which disconnected the radio. Co-defendant Thomas had Mr. Yarnell in a chokehold as [Gerald] started dragging him out of the tow truck by his testicles. Mr.

- 2 -

Yarnell was unable to breathe as co-defendant Thomas was squeezing his throat. As [Gerald] and co-defendant Thomas were dragging him out of his truck toward the side of the bridge behind the tow truck, Mr. Yarnell heard one of the men say, "Let's murd (sic) this mother fucker" and another voice said, "Let's throw the mother fucker off the bridge." As he is on the ground being [dragged] nearer to the edge of the bridge, Mr. Yarnell couldn't breathe and went limp. Co-defendant Thomas continued squeezing his neck when [Gerald] let go and began kicking Mr. Yarnell several times around his legs, his front mid-section, and back. The incident was over when a car pulled up and a man who identified himself as an off-duty University of Pennsylvania police officer stopped and drew his weapon. Co-defendant Thomas still had him in a chokehold when the [off-duty officer's] car stopped. Other police officers eventually appeared.

Mr. Yarnell testified that he was treated at Mercy Suburban as a result. He was diagnosed with bulging discs in his neck and had to receive shots to relieve the swelling. Mr. Yarnell had no injuries prior to this incident and missed approximately three weeks of work as a result.

University of Pennsylvania Police Officer Eugene Joynes testified that he was on his way home from work when he turned [n]orth onto 40th Street and observed co-defendant Thomas grabbing the neck of a white man (Mr. Yarnell) over by the curb. He also observed [Gerald] kick the male at least once in his torso area. Officer Joynes pulled over, exited his vehicle, drew his weapon and identified himself as a police officer. Officer Joynes told co-defendant Thomas to release the man and [Gerald] said, "This man stole our car." Mr. Yarnell didn't say anything. Officer Joynes tried to call 911 from his cell phone but was unable to get through. One of the defendants was eventually able to get through to police. Officer Joynes stated that Mr. Yarnell had paperwork for both of the vehicles on the tow truck.

Philadelphia Police Officer Todd Matthews testified that he responded to a radio call to the area of the 900 block of North 40th Street. Officer Matthews identified both [Gerald] and co-defendant Thomas. He recovered Mr. Yarnell's camera from one of the defendants.

- 3 -

The Commonwealth and [Gerald] stipulated that Mr. Yarnell was seen at Mercy Suburban on November 30, 2012 and was diagnosed with chest wall contusion and [a] contusion on his back.

Co-defendant Thomas] did not testify or present additional evidence.

[Gerald] testified after a stipulation between the Commonwealth and defense counsel that [Gerald] has a reputation as a law-abiding, non-violent, peaceful individual.

[Gerald] testified that he left his house [on] W. Girard Avenue at about 2:45 p.m. to pick up his son at school on Girard Avenue; school is over at 3:00 p.m. He looked for his Expedition which was not where he left it. He stated that he drives the vehicle every day and parks it in the same location every day. He was flailing his arms while looking for the vehicle and saw a friend (later identified as Rob) who is a tow truck driver. Based on what Rob told him (that someone took the car; he didn't know the person so it was not a City person), he and co-defendant Thomas went to look for the vehicle. Co-defendant Thomas told him to get in his car because he thought he knew where the Expedition was because he saw it on a bridge, on the 40th Street Bridge. [Gerald] got into the car and he and co-defendant Thomas drove over to the 40th Street Bridge. Co-defendant Thomas pulled up behind the tow truck that had his car and a van on it. [Gerald] exited the vehicle first. He said, "What the fuck are you doing?" and the driver said, "What do you mean?" To which [Gerald] replied that his car was licensed, registered, insured, that there was no reason for it to be on a flatbed. He also requested the driver to show him the paperwork justifying him taking his car. [Gerald] stated that he was not irate, but was not pleased. The tow truck driver said he would show him the paperwork but [Gerald] said "No, let me get my paperwork." He also testified that Mr. Yarnell said he wouldn't let the car down from the tow truck. According to [Gerald], the car was lowered and he was able to get into the glove box. While he was retrieving his paperwork, it appeared to him that Mr. Yarnell was getting something from underneath the seat of the tow truck; he couldn't tell what it was, thought it may

- 4 -

have been black. [Gerald] stated that he feared for his safety (he thought Mr. Yarnell was going to shoot him or steal his car) so he walked up to the tow truck and can't remember what happened next. He testified that he did not remember kicking Mr. Yarnell. He remembered that co-defendant Thomas was standing up and that he never left his vehicle. On cross-examination, [Gerald] was adamant that co-defendant Thomas did not choke Mr. Yarnell.

Trial Court Opinion, 12/31/2015, at 2-5 (record citations omitted).

Gerald and Thomas were arrested and charged with aggravated assault, robbery, conspiracy, theft, receiving stolen property ("RSP"), terroristic threats, simple assault, and recklessly endangering another person ("REAP").[2] The cases were consolidated for a non-jury trial, and, on January 23, 2015, the trial court found both Gerald and Thomas guilty of all charges, except robbery. On July 21, 2015, the trial court sentenced Gerald to a term of 11½ to 23 months' imprisonment, with immediate parole to house arrest, followed by three years' probation on the charge of aggravated assault; an identical sentence, to be served concurrently, on the charge of conspiracy; and a concurrent term of two years' probation on the charge of theft. The court determined the remaining charges either merged for

_____

[2] **See** 18 Pa.C.S. §§ 2702(a), 3701(a)(1)(ii), 903, 3921(a), 3925(a), 2706(a)(1), 2701(a), and 2705, respectively.

sentencing purposes or warranted no further punishment. This timely appeal follows.[3]

In his first issue, Gerald argues the Commonwealth did not prove he acted with the requisite intent to support his conviction of aggravated assault. Specifically, he contends the Commonwealth failed to disprove his claim of imperfect defense of property. **See** Gerald/Thomas Brief at 17-19.

Our review of a challenge to the sufficiency of the evidence is well-settled:

> [W]e consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [fact finder's] beyond a reasonable doubt. **Commonwealth v. Murray**, [623] Pa. [506], 83 A.3d 137, 150–51 (2013). Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary. **Id.** at 151.

**Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014), *cert. denied*, 135 S.Ct. 1400 (U.S. 2015).

---

[3] On October 8, 2015, the trial court ordered Gerald to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Gerald complied with the court's directive, and filed a concise statement on October 29, 2015. We note that while Gerald and Thomas raised the same claims in their respective concise statements, the trial court filed separate opinions for each co-defendant.

To secure a conviction of aggravated assault, the Commonwealth must establish, beyond a reasonable doubt, that the defendant "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Proof of a defendant's mere reckless behavior is insufficient; rather, the recklessness required for an aggravated assault conviction is "equivalent to that which seeks to cause injury." *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995). Indeed, "[t]he corresponding *mens rea* for this standard is "malice[.]" *Commonwealth v. McHale*, 858 A.2d 1209, 1212 (Pa. Super. 2004). *See also Commonwealth v. Kling*, 731 A.2d 145, 147 (Pa. Super. 1999) ("There is no distinction between the malice essential to third degree murder and that necessary for aggravated assault."), *appeal denied*, 745 A.2d 1219 (Pa. 1999).

Preliminarily, we note that to the extent Gerald argues the evidence was insufficient to demonstrate he acted with malice when he attacked Yarnell,[4] irrespective of his defense of property claim, we find this argument has been waived because it was not included in his court-ordered Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii). Gerald's concise

---

[4] *See* Gerald/Thomas Brief at 15-17.

statement listed nine issues, the first of which questioned whether "defense of property (even if imperfect) negates the malice necessary for an aggravated assault conviction." Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. Rule 1925(b), 10/29/2015, at 1. Issues 2 through 7 raised the identical claim with respect to the intent element of Gerald's remaining convictions. *See id.* at 1-2. Issues 8 and 9 read as follows:

> 8. Whether defendant's defense of property is sufficient to negate the offenses of aggravated assault and related convictions under the circumstances in the record as a matter of law?
>
> 9. Whether the evidence or the weight of the evidence along with defendant's character was sufficient to find petitioner guilty of aggravated assault and the related offenses?

*Id.* at 2.

Therefore, in his concise statement, Gerald's challenge to the intent element of his aggravated assault conviction is tied to his (imperfect) defense of property. The argument in his brief that his "conduct was not remotely egregious enough" to demonstrate malice is, accordingly, waived.[5] Gerald/Thomas Brief at 17.

_____

[5] We also note that because Gerald did not include this claim in his concise statement, the trial court did not address it in its opinion. Nevertheless, even if the issue was not waived, we would conclude the evidence presented by the Commonwealth was sufficient to establish Gerald and Thomas acted with malice when they assaulted Yarnell.

Gerald also contends that his mistaken, but reasonable, belief that Yarnell had stolen his car negated the intent element of the crime of aggravated assault. *See id.* at 17-19. He claims his intent "was at all times to prevent [Yarnell] from having the continued possession of his vehicle which he thought was illegally moved or stolen[,]" and the Commonwealth "never rebutted the reasonableness of that assertion but instead focused on just the actions of" Gerald and Thomas. *Id.* at 18. Further, he argues that once he presented evidence of this mistake of fact, the Commonwealth was required to either prove "the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged." *Id.* at 19.

Pursuant to Section 507 of the Crimes Code, a person may use force to protect or defend his property under the following relevant conditions:

> **(a) Use of force justifiable for protection of property.--**The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:
>
> > (1) to prevent or terminate … the unlawful carrying away of tangible movable property, if such … movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts; or
> >
> > (2) … to retake tangible movable property, if:
> >
> > > (i) the actor believes that he or the person by whose authority he acts … was unlawfully dispossessed of such … movable property and is entitled to possession; and

(ii) (A) the force is used immediately or on fresh pursuit after such dispossession; or

(B) the actor believes that the person against whom he uses force has no claim of right to the possession of the property and, in the case of land, the circumstances, as the actor believes them to be, are of such urgency that it would be an exceptional hardship to postpone the entry or reentry until a court order is obtained.

* * *

**(c) Limitations on justifiable use of force.—**

(1) The use of force is justifiable under this section only if the actor first requests the person against whom such force is used to desist from his interference with the property, unless the actor believes that:

(i) such request would be useless;

(ii) it would be dangerous to himself or another person to make the request; or

(iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made.

18 Pa.C.S. § 507(a), (c).

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we find the trial court thoroughly addressed and properly disposed of this claim in its opinion. **See** Trial Court Opinion, 12/31/2015, at 8-10 (finding Gerald's use of force was not justified under Section 507 because (1) the only evidence supporting the co-defendants' mistaken belief that the car was stolen was Gerald's own testimony; (2) the

force used to retake the property was not used "immediately or in fresh pursuit" of the purported theft, but occurred at least 45 minutes later; (3) "there was no urgency" that would result in "exceptional hardship" to justify the use of force, since the co-defendants could have called the police; and (4) the co-defendants did not give Yarnell the opportunity to "desist from his alleged interference," but rather attacked him as he attempted to provide the paperwork for the tow). *Id.* at 10. Accordingly, we rest on its well-reasoned basis.

Next, Gerald similarly contends his (imperfect) defense of property was sufficient to negate the intent elements of his remaining convictions – simple assault, REAP, theft, RSP, conspiracy, and terroristic threats. *See* Gerald/Thomas Brief at 20-24. He summarizes:

> The evidence in this case, even when viewed in the Commonwealth's favor, cannot establish that [Gerald and Thomas] are guilty of the crimes as alleged when considering their defense of justification. Even the Commonwealth's evidence establishes that one of [them] called the police; [they] did not use any weapons or excessive force; [they] stopped the aggressive interaction against [Yarnell] right after the police arrived; [] Gerald's car was taken; no note or reason was left indicating why the car was taken; [Gerald's] car was registered; and upon finding the vehicle Appellant Gerald (who has a reputation as law abiding and non-violent) immediately sought a reason for [Yarnell] having his vehicle – vulgar language notwithstanding. Therefore, neither [Gerald's nor Thomas'] actions as established amount to the necessary elements to convict on any of the offenses[.]

Gerald/Thomas Brief at 24.

- 11 -

Again, we conclude the trial court sufficiently detailed the evidence supporting Gerald's convictions. **See** Trial Court Opinion, 12/31/2015, at 10-16 (finding evidence sufficient to support convictions of simple assault, REAP, theft, conspiracy, and terroristic threats when co-defendants (1) initiated confrontation, (2) acted "*in tandem*"[6] when they assaulted Yarnell, (3) threatened to throw him off the bridge; (4) continued to assault him until ordered to release him by police officer pointing a gun, and (5) removed a camera from Yarnell's pocket during the assault). Furthermore, with regard to Gerald's claim that his actions were justified under the defense of property statute, the court opined:

> [T]he evidence produced by the Commonwealth overwhelmingly supports the court's conclusion that the Commonwealth met its burden [of disproving Gerald was acting in defense of property]. First, [Gerald] and co-defendant Thomas were the initial aggressors in that they hunted down the tow truck and the operator. Second, the evidence found credible by this court established that [Gerald] attacked Mr. Yarnell, without a previous attack or threat to either defendant, when Mr. Yarnell attempted to retrieve his paperwork. Third, Officer Joynes observed co-defendant Thomas with his hands around Mr. Yarnell's neck and [Gerald] kicking Mr. Yarnell's body. Finally, there is not a scintilla of evidence that it was "**immediately necessary**" to use force to retrieve this vehicle. Mr. Yarnell had paperwork evidencing his company's directive and his belief that he was to tow that vehicle. *See* Commonwealth v. Emler, 903 A.2d 1273 (Pa. Super. 2006); 18 Pa.C.S.A. § 507. Therefore, the court was correct in determining that [Gerald's] defense-of-property argument is wholly and utterly without merit[.]

---

[6] Trial Court Opinion, 12/31/2015, at 14.

Trial Court Opinion, 12/31/2015, at 15-16 (emphasis in original).

We find no reason to disagree. Gerald's argument relies on his own interpretation of the evidence. While it is true that neither of the co-defendants used a weapon during the attack, co-defendant Thomas put Yarnell in a chokehold to the point that Yarnell "went limp" and "couldn't breath[.]" N.T., 1/23/2015, at 26. Meanwhile, Gerald dragged Yarnell by his testicles from the tow truck, and proceeded to kick him in his legs, stomach and back, while one of the co-defendants suggested they "throw the mother fucker off the bridge." *Id.* at 25-26, 27. Moreover, the co-defendants did not stop the assault until after Officer Joynes pointed a gun at them and directed them to stop. *Id.* at 29. Further, although Gerald did initially ask Yarnell why he had his vehicle, neither he nor co-defendant Thomas waited until Yarnell produced paperwork for the tow, but rather, they brutally attacked Yarnell as he reached in his truck to retrieve the papers. *See id.* at 22-24. Accordingly, we find no reason to disturb the ruling of the trial court.

Gerald's final issue challenges the weight of the evidence supporting his convictions. It is well-settled that when reviewing a weight of the evidence claim,

> an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

- 13 -

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S. Ct. 1792 (U.S. 2014). For that reason, "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012), *appeal denied*, 69 A.3d 601 (Pa. 2013) *(*citations omitted). *See* Pa.R.Crim.P. 607. "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Lofton*, *supra*, 57 A.3d at 1273. Our review of the certified record reveals Gerald failed to raise a weight of the evidence claim with the trial court at any time before the filing of his notice of appeal.[7] Therefore, we find the claim is waived for our review.

Judgment of sentence affirmed.

Judge Jenkins did not participate in the consideration or decision of this case.

---

[7] We note that while Gerald did include a weight of the evidence challenge in his court-ordered Pa.R.A.P. 1925(b) statement, and the trial court addressed the claim in its opinion, Gerald's weight claim is not preserved "in the absence of an earlier motion." *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2017