**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**John J. KLING, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1999.

Filed May 7, 1999.

Joseph M. Devecka, State College, for appellant.

Dwight C. Harvey, District Attorney, McConnellsburg, for Com., appellee.

Before CAVANAUGH, EAKIN and OLSZEWSKI, JJ.

EAKIN, J.:

¶1 John J. Kling appeals from the judgment of sentence entered following his convictions for third degree murder, aggravated assault, recklessly endangering another person, and possession of marijuana. We affirm.

¶2 On August 28, 1996, appellant was driving his red Chrysler Conquest near McConnellsburg when he noticed a black Chevrolet Camaro in his rear view mirror. The Camaro, driven by Larry Seville, took off after appellant and both automobiles began racing up a curvy mountain road known as Scrub Ridge. At speeds in excess of 80 m.p.h., both vehicles reached the crest of Scrub Ridge, and with appellant in the lead, the improvident competitors began descending the mountain road.

¶3 The first downside mile from the top of Scrub Ridge is riddled with eight substantial curves and five cautionary speed signs. Nevertheless, appellant maintained his excessive speeds, pulling away from the Camaro and disappearing into the blind curves. Through the second of these curves, appellant was on the wrong side of the road and nearly hit Jean

Pepple traveling the opposite direction in her minivan. In spite of this near collision, appellant neither slowed down nor took action to mitigate the obvious danger from his racing.

¶ 4 Approaching the eighth major curve on the downslope, appellant swung into the no-passing zone and blew past two pickup trucks traveling in front of him. He then headed into the sharp double curve at nearly 70 m.p.h., crossed the center line again, and struck a vehicle driven by Helen Mellott. The collision, eight-tenths of a mile after appellant ran Ms. Pepple off the road, killed Ms. Mellott instantly and left her ten-year-old son with a ruptured artery to his liver.

¶ 5 On December 17, 1997, following a jury trial, appellant was found guilty of third degree murder, aggravated assault, recklessly endangering another person, and possession of marijuana.[1] He was sentenced to prison for an aggregate term of twelve to thirty years. This appeal follows, wherein the following issues are raised:

I. Whether the evidence was sufficient to establish the element of malice required to sustain appellant's convictions for third degree murder and aggravated assault?

II. Whether the trial court erred in denying appellant's requested charges to the jury?

III. Whether the trial court erred in failing to allow appellant to present evidence of his own medical condition?

■ ¶ 6 Appellant's first issue challenges the sufficiency of the evidence for his convictions of third degree murder and aggravated assault. In reviewing the sufficiency of the evidence, our task is to determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the factfinder to find every element of the crime

charged beyond a reasonable doubt. *Commonwealth v. Zambelli*, 695 A.2d 848, 851 (Pa.Super.1997).

¶ 7 Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. 18 Pa.C.S. § 2502(c); *Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa.Super.1998). Aggravated assault arises when a person attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting an extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1). Malice is the crucial element in question here, as it is the component which distinctly characterizes both of these offenses. *See Commonwealth v. Fierst*, 423 Pa.Super. 232, 620 A.2d 1196, 1203 (1993) (malice must be present to sustain a conviction for both third degree murder and aggravated assault).

■ ¶ 8 There is no distinction between the malice essential to third degree murder and that necessary for aggravated assault. *See Commonwealth v. Hickson*, 402 Pa.Super. 53, 586 A.2d 393 (1990), *appeal denied*, 527 Pa. 663, 593 A.2d 838 (1991) (malice is a constituent element of both third degree murder and aggravated assault; jury's finding of not guilty for third degree murder, i.e., a malicious act, precludes a second trial for aggravated assault); *see also Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616, 618 (1995) (aggravated assault is the functional equivalent of a murder in which, for some reason, death fails to occur). As such, the *mens rea* of malice respective to each of these offenses may be discussed concurrently.

■ ¶ 9 Malice exists where there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social

---

1. The marijuana was found in the car's trunk; appellant was not under the influence.

duty, although a particular person may not be intended to be injured." *Commonwealth v. Pigg*, 391 Pa.Super. 418, 571 A.2d 438, 441 (1990), *appeal denied*, 525 Pa. 644, 581 A.2d 571 (1990) (quoting *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868)). Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. *See Commonwealth v. Scales*, 437 Pa.Super. 14, 648 A.2d 1205, 1207 (1994), *appeal denied*, 540 Pa. 640, 659 A.2d 559 (1995) (regarding third degree murder). A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result. *See O'Hanlon, supra*, 653 A.2d at 618 (regarding aggravated assault).

¶ 10    In view of this heightened *mens rea*, motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third degree murder or aggravated assault. Recent case law exemplifying this lies in *O'Hanlon, supra*, a case involving a driver who ran a red light and struck another vehicle, causing serious injury to the other driver. Our Supreme Court reversed the aggravated assault conviction, finding only mere recklessness, not that which almost assured death or injury would ensue. In so doing, the Court explained "[s]erendipity, not intention, placed the victim in his path when he drove through the red light." *Id.*, 653 A.2d at 618.

¶ 11    More recently, in *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998), our Supreme Court again reversed a conviction of aggravated assault, where a driver recklessly caused a severe accident. The facts of this case demonstrated a much more egregious course of conduct than in *O'Hanlon*. After ingesting alcohol and barbiturates, Comer got behind the wheel of his car and proceeded to a strip club on an urban thoroughfare. Although he was familiar with the busy road, Comer drove his vehicle at excessive rates of speed, cutting off cars and plowing onto a sidewalk. Ultimately, his vehicle severed a light pole, smashed into a bus stop, and crossed over all the lanes of the intersecting avenue, stopping only after it crashed into a brick wall. This disaster killed one person and severely injured another. The Court held Comer's conduct, while criminally reprehensible, was insufficient to establish the state of mind equivalent to that which seeks to cause injury.[2]

¶ 12    This is not to say that being in a vehicle insulates a driver from conviction of these crimes. In both *O'Hanlon* and *Comer*, the Court distinguished *Commonwealth v. Scofield*, 360 Pa.Super. 552, 521 A.2d 40 (1987), *appeal denied*, 517 Pa. 593, 535 A.2d 82 (1987), an automobile case where aggravated assault was upheld. Scofield was driving his car, scraping it against the bumper of a vehicle parked on the street. Although sparks emanated, he drove another ten feet, swerved onto the sidewalk and struck a building. A passing cabdriver realized Scofield had struck a pedestrian and was dragging him underneath the vehicle. The alarmed cabdriver approached and told Scofield to turn the car off; he even attempted to reach into the car and remove the keys. Scofield, however, became belligerent and assaulted the cabdriver. He then tried to put his car into reverse, but a flat tire prevented his flight. Because Scofield's behavior prior to and after the accident established his awareness of the risk of serious injury, a panel of this Court found intentionally dan-

---

**2.** This Court, sitting *en banc,* recently decided *Commonwealth v. Dellavecchia*, 725 A.2d 186 (Pa.Super.1998) (*en banc* ). Applying *Comer,* the court found insufficient evidence of mal-ice to support aggravated assault where a speeding drunk driver collided with a parked car and injured its occupants.

gerous conduct and upheld his aggravated assault conviction.

¶ 13 Indeed, at first glance, *Comer* and *Scofield* seem factually analogous, but as the Supreme Court noted, the "circumstances [in *Scofield*] demonstrated a higher degree of recklessness than those presented in [*Comer*]." *Comer*, 716 A.2d at 597. The cornerstone of this conclusion rested with the notion Scofield considered, then disregarded, the threat to the life of the victim; "[i]n contrast, [Comer] sped past another vehicle, his car rubbed the curb of the sidewalk and the accident ensued *immediately thereafter*." *Id.* (emphasis added).[3] Thus, the *Comer* Court indicated a conviction based on malice is appropriate where evidence demonstrates the element of *sustained recklessness* by a driver in the face of an *obvious risk of harm* to his victims. A review of Pennsylvania case law thoroughly supports this proposition.

¶ 14 In *Pigg, supra,* an intoxicated tractor-trailer driver killed two people after he crashed into their vehicle on a narrow road. Prior to this collision, he drove several other vehicles off the road and ignored another driver's request to stop driving. The Court found this conduct easily amounted to malice, explaining "there can be no question that Pigg knew the danger he posed to others, yet willfully pursued a course of conduct that continued to subject them to that danger." *Id.*, 571 A.2d at 442.

¶ 15 Also instructive is *Urbanski, supra,* where a drunk driver, despite pleas from his wife to slow down and stop driving erratically, caused a collision which resulted in a fatality. In upholding the third degree murder conviction, we explained:

[T]he properly admitted trial testimony reveals a dangerously high blood alcohol level and a clear road surface combined with erratic driving and repeated refusals to give up the wheel. Appellant was or should have been aware of the danger that could result from driving so fast and so recklessly, especially after having had so much to drink. Even if he was not aware, his wife repeatedly reminded him of the danger and asked many times if she could drive the car. But appellant recklessly disregarded her pleas and the probability of a tragic result. His conduct in the car was the very type of conduct that the definition of malice describes.

*Id.*, 627 A.2d at 793–94.

¶ 16 In *Scales, supra,* a reckless motorist was driving a heavy and high-powered vehicle at excessive speeds in a crowded residential neighborhood when children were playing in the streets and on the sidewalks. He ignored a stop sign, almost colliding with a vehicle at an intersection. When a bystander told him to slow down, he responded with "shut up." Without ever braking, he sideswiped another car, swerved onto a curb, and ran into a large planter which was pushed into two children, crushing one of them to death. This Court affirmed the jury's finding of third degree murder, holding malice could be inferred by the driver's sustained disregard for the lives and safety of people and vehicles in his path, evidenced by his failure to slow down despite warnings to do so, and refusal to apply the brakes upon sideswiping another automobile and swerving onto the sidewalk. *Id.*, 648 A.2d at 1208. The Court noted:

When the actor so far crosses the line of reasonableness, concern for the safety of others and refuses to heed cautionary calls to desist, malice must be implied.

---

3. The fact both Comer and Scofield drank alcohol and ingested controlled substances was not dispositive. *Comer*, at 597. Indeed, intoxication is a relevant factor in determining malicious recklessness, but drinking and driving alone has been held to be insufficient without evidence of an awareness of a potential danger. *See Commonwealth v. Urbanski*, 426 Pa.Super. 505, 627 A.2d 789, 793 (1993), *appeal denied*, 535 Pa. 657, 634 A.2d 221 (1993); *accord O'Hanlon*, at 618 n. 5.

Any person who attempts to emulate the driving patterns exhibited in any of the "French Connection," "Smokey and the Bandit" or "Beverly Hills Cops" films on city streets crowded with children and others, the predictable victims of the irrational behavior, cannot escape having malice implied to his actions. Motor vehicles still outdistance firearms as the most dangerous instrumentality in the hands of irresponsible persons in our society today.

*Id.*, 648 A.2d at 1209.

¶ 17  In each of these cases finding malice in the acts of a reckless motorist, there was a plea from others to stop, or a near-miss preceding the eventual crash. These circumstances evidenced the sustained, purposeful recklessness necessary to prove a "knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur." Indeed, these circumstances are facts which allow a jury to find the driver had time and reason to calculate and reflect upon a deadly condition taking place, such that recklessness and malice exist. The evidence in the present case clearly exemplifies this concept.

¶ 18  Appellant was deliberately racing his high-powered car at speeds of 75–80 m.p.h. on a two and one-half mile stretch of a curvy mountain road. He was familiar with this road, having traveled it two to three times per week for over a year prior to the crash. He passed five cautionary signs warning him to slow down around the treacherous curves. In spite of these warnings, appellant proceeded at high rates of speed and, cutting the curves in order to negotiate the turns, he nearly hit Jean Pepple driving in the opposite lane of travel. Without a doubt, the aggregate of these circumstances plainly warned appellant his conduct was nearly certain to result in a serious or fatal disaster. Nevertheless, he consciously disregarded this awareness and continued his race for eight-tenths of a mile after running Ms. Pepple off the road. Illegally passing two pick-up trucks, sustaining his reckless and malicious conduct, appellant sped into a dangerous double blind curve where he smashed into the victims.

¶ 19  Unlike *Comer*, the crash here did not ensue immediately after the driver became aware of his life-threatening conduct. To the contrary, appellant had adequate time to calculate and reflect upon the consequences of his reckless conduct, thus rendering the choice to continue it malicious. As such, this case is akin to the litany of criminal convictions finding malice in automobile cases. Appellant chose to play Russian roulette with the other drivers on Scrub Ridge. By speeding through the curves, he pulled the trigger four or five times with one near miss; on the last pull, however, he seriously injured a young boy and killed the boy's mother. This conduct exhibited the sustained recklessness, in the face of warnings, necessary to prove a "knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur." We therefore uphold appellant's convictions for third degree murder and aggravated assault.

¶ 20  In his second issue, appellant argues the trial court committed numerous errors in failing to instruct the jury on requested points of charge regarding the element of malice. However, the record reveals a charge appropriately tracking the standard jury instructions and beyond, stressing the heightened degree of recklessness necessary to convict for third degree murder and aggravated assault. The trial court's charge, in its entirety, adequately and correctly informed the jurors of the relevant considerations particular to malice in the instant case. *See Commonwealth v. Clark*, 453 Pa.Super. 257, 683 A.2d 901, 904 (1996) (review of jury instructions includes entire charge and abuse of discretion will not be found where the law was presented sufficiently and accurately). Furthermore, we cannot find appellant was prejudiced by the trial court's refusal to grant his re-

quested charge; as detailed above, appellant's egregious and reckless conduct clearly supported the jury's finding of malice. *See Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 999 (1992), *appeal denied*, 535 Pa. 673, 636 A.2d 632 (1993) (we will not reverse a trial court's refusal to give a requested jury charge unless it amounts to prejudice).

¶ 21 Appellant lastly suggests the trial court improperly refused him the opportunity to show the Commonwealth's bias by placing him in prison while injured and in a wheelchair. The alleged error is apparently based upon the following trial testimony: [4]

[Defense Counsel]: Now, after you were arrested and talked to Corporal Benson, did you eventually get to the Franklin County Prison?

[Appellant]: Yes.

[Defense Counsel]: The day after you were in the Franklin County Prison were you still in your wheelchair?

[Appellant]: Yes.

[Defense Counsel]: That next day, September 19, were you taken out of Franklin County Prison?

[Appellant]: Yes, I was.

[Defense Counsel]: How?

[Appellant]: By ambulance.

[Defense Counsel]: Where were you taken by ambulance?

[Appellant]: Conemaugh Valley Hospital.

[Defense Counsel]: Did they take you back by ambulance at Franklin County Prison after you were at Conemaugh?

[Appellant]: Yes.

[Defense Counsel]: The same day?

[Appellant]: Same day, yes.

[Defense Counsel]: Did Franklin County authorities ever take you to the hospital again?

[Appellant]: Yes, they did.

[Defense Counsel]: How was that done?

[Appellant]: Sheriff's automobile, car.

[Defense Counsel]: What seat were you in?

[Appellant]: Back seat.

[Defense Counsel]: And how was that trip?

[District Attorney]: I'm going to object.

The Court: How's this relevant?

[District Attorney]: This is just for sympathy, Your Honor.

The Court: How's it relevant?

[Defense Counsel]: The relevance is to show the bias of the Commonwealth in leaving him in the Franklin County Prison in a wheelchair.

The Court: Objection sustained. The jury is instructed to disregard what his trip to Conemaugh and so forth does not have anything to do directly with what caused this accident.

■ ¶ 22 We find nothing inappropriate in the curtailing of this examination. Appellant was allowed to introduce the evidence he complains of—the jury was informed he was in a wheelchair at the time of his arrest and imprisonment. Any possible bias was, in fact, before the jury. Accordingly, there was no abuse of discretion. *See Commonwealth v. Days*, 718 A.2d 797, 802 (Pa.Super.1998) (admissibility of evidence is a matter addressed to the sound discretion of the trial court, which may only be reversed upon a showing of abuse).

¶ 23 Even if the evidence was improperly limited, we can perceive nothing more than harmless error, as the omission of

---

**4.** In contravention to our Rules of Appellate Procedure, appellant has failed to reference the germane notes of testimony where the testimony appears. *See* Pa.R.A.P. 2119(c). As such, we would be fully justified in finding this issue waived. *See Commonwealth v.*

*Shotwell*, 717 A.2d 1039, 1042 (Pa.Super.1998). However, the trial court's thorough opinion cites the testimony of which appellant ostensibly complains, enabling our review.

this testimony could not reasonably have contributed to the verdict.

¶ 24 Based on the foregoing, we affirm the judgment of sentence entered by the trial court.

¶ 25 Judgment of sentence affirmed.

¶ 26 CAVANAUGH, J. files a dissenting opinion.

CAVANAUGH, J., dissenting:

¶ 1 I respectfully dissent from the holding of the majority, which affirms the judgments of sentence of murder in the third degree and of aggravated assault. Because I would not find the evidence sufficient to allow a finding of more than mere recklessness, I would hold that the requisite *mens rea* was not established.

¶ 2 In order to prove recklessness sufficient to support a conviction of third degree murder or aggravated assault, the degree of culpability is that which considers and then disregards the threat necessarily posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in either reckless driving or driving while intoxicated. *Com. v. Comer*, 552 Pa. 527, 531–532, 716 A.2d 593, 596 (1998) (quoting *Com. v. O'Hanlon*, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995)). An *en banc* panel of this court in *Com. v. Dellavecchia*, 725 A.2d 186 (Pa.Super.1998), in applying this standard, reversed a conviction of aggravated assault where an intoxicated driver drove at an excessive rate of speed over congested city streets, weaving in and out of traffic, prior to a crash.

¶ 3 The necessary element lacking is that the appellant considered, then disregarded, the threat to the lives of the victims. There is no evidence to show the necessary deliberation by appellant. Specifically, the passenger in appellant's vehicle did not testify that she admonished caution and that her advice went unheeded; other motorists did not attempt to communicate cautionary warnings to ap-

pellant as he speeded past them. The lack of evidence of warnings distinguishes the evidence of *mens rea* in this case from that presented in *Com. v. Scofield*, 360 Pa.Super. 552, 521 A.2d 40 (1987); *Com. v. Pigg*, 391 Pa.Super. 418, 571 A.2d 438 (1990); *Com. v. Scales*, 437 Pa.Super. 14, 648 A.2d 1205 (1994); and *Com. v. Urbanski*, 426 Pa.Super. 505, 627 A.2d 789 (1993).

¶ 4 The facts of this case, in my opinion, place it squarely within the holdings of *Comer* and *Dellavecchia*, and require a finding that the evidence did not demonstrate the legal malice necessary for conviction of third degree murder and aggravated assault.

¶ 5 Appellant is not without criminal culpability for his actions. The jury returned guilty verdicts for involuntary manslaughter, homicide by vehicle, three counts of recklessly endangering another person, and simple assault. In my opinion, the evidence is clearly sufficient to support these verdicts. I would remand to the lower court for resentencing on these remaining counts since no sentence was imposed on them, with the exception of the one count of reckless endangerment of appellant's passenger.