2024 PA Super 171

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN R. PETERS | : | |
| | : | |
| Appellant | : | No. 2591 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 15, 2021
In the Court of Common Pleas of Bucks County
Criminal Division at CP-09-CR-0003901-2020

BEFORE: PANELLA, P.J., LAZARUS, J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and KING, J.

OPINION BY MURRAY, J.:           **FILED AUGUST 7, 2024**

Kevin R. Peters (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts each of third-degree murder, aggravated assault – serious bodily injury (aggravated assault), recklessly endangering another person, homicide by vehicle while driving under the influence (DUI), aggravated assault by vehicle while DUI, homicide by vehicle, and aggravated assault by vehicle.[1] The trial court separately convicted Appellant of DUI – general impairment, DUI – high rate of alcohol, and the summary offenses of driving within single lane, following too closely, driving vehicle at safe speed, and reckless driving (collectively, the non-jury

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2702(a)(1), 2705; 75 Pa.C.S.A. §§ 3735(a)(1)(i), 3735.1(a), 3732(a), 3732.1(a).

offenses).[2]  Appellant challenges the sufficiency of the evidence supporting the jury's finding of malice, the *mens rea* required for his convictions of third-degree murder and aggravated assault.  After careful consideration, we conclude the Commonwealth established the high degree of recklessness required for a finding of malice, and therefore, we affirm.

The trial court detailed the underlying facts:

> Shortly after midnight on Friday, December 6, 2019, Nicholas Hafto called 911 police emergency and reported that he was driving on Interstate 95 (I-95) North, and that "there is a white Mazda SUV, swerving, almost sideswiped me, he came flying right by me."  At trial, Mr. Hafto further explained that the SUV erratically changed speeds, back and forth from fast to slow.  He stated that the SUV made an abrupt exit off I-95 at the Route 29 New Jersey exit, noting that while exiting, the operator of the SUV slammed on his brakes.
>
> Another motorist, Scott Emrick, also called 911.  He reported that he was also traveling on I-95 and observed a white Mazda SUV "swerving left and right."  He also reported erratic acceleration, deceleration, and a sharp exit off I-95 and noted that the vehicle's headlights were not on.
>
> Surveillance cameras captured images of the SUV as it exited I-95 into New Jersey.  Approximately one minute later, the vehicle reentered [I-95] and proceeded South.
>
> At approximately 1:00 a.m., Edmonde Sestini, Jr., a driver working for Clarion Ambulance, was driving South on I-95 at a speed between 50 and 60 miles per hour when a white Mazda SUV passed him at a high rate of speed.  Mr. Sestini testified that the SUV "came flying past me on the left-hand side."  Approximately half a minute later, and approximately [a] half-mile further down I-95, Mr. Sestini came upon the SUV stopped behind a second vehicle[,] which was facing north in the southbound lane of traffic and was completely engulfed in flames.  One man had already

---

[2] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(b), 3309(1), 3310(a), 3361, 3736(a).

been able to get out of [the burning] vehicle, [and] another man was trying to get out. Mr. Sestini and his partner removed [Appellant] from behind the wheel of the SUV, and, due to [Appellant's] complaints of hip pain, placed him on the ground and dragged him away from the fire.

The collision occurred near the Ford Road overpass in Bristol Township, Bucks County. At approximately 1:05 a.m., the [Pennsylvania] State Police [(PSP)] were dispatched. Upon arrival at the scene, police found a van fully engulfed in flames and a 2016 Mazda CX-5 SUV … with heavy front-end damage. … [Appellant] was transported from the scene to Jefferson Torresdale Hospital in Northeast Philadelphia.

Two men involved in the collision, … Juan Tavarez [(Tavarez)], and his son, Charlys Tavarez Santelises [(Santelises),] were able to extricate themselves from the burning vehicle and make their way to Jefferson Torresdale Hospital. The bodies of [Tavarez's other son, Juan Jose Tavarez Santelises,] and Claribel Dominguez were removed from the rear seat of the van. Later that same day, forensic pathologist Dr. Ian Hood autopsied the bodies and determined to a reasonable degree of medical certainty that thermal burns caused the death of both individuals.

The survivors, [] Tavarez and [] Santelises, suffered permanent injuries and testified at length to the extent of their injuries and the treatment they received. …

* * *

Subsequent investigation into the cause of the collision revealed that the occupants of the van were driving on I-95 South[,] returning from working an 11-hour shift at a New Jersey package sorting plant. [] Tavarez, the driver of the van, drove at a speed of between 50 and 55 miles per hour as a precautionary measure due to a slight whistling sound in the van. Because of their reduced speed, … Tavarez[] activated his emergency flashers and moved into the right lane of traffic. The first indication that he had of what was about to occur was what Mr. Tavarez described to be like a bomb going off, immediately followed by an engulfing fire.

Trial Court Opinion, 3/4/22, at 1-3, 5 (citations to record omitted).

The trial court further summarized the evidence of Appellant's activities prior to the collision:

[Appellant] had spent the evening at an open bar social event before proceeding to two separate bars. The open bar event was held in a private room at Ruth's Chris Steak House in Philadelphia and ran from 5:00 p.m. through 8:00 p.m. During these hours[, Appellant] was drinking vodka. He and his co-workers then moved to the public bar[ at Ruth's Chris,] where [Appellant] consumed bourbon. Co-worker Jaquelyn Smith testified she had offered [Appellant] a ride home shortly after 10:00 p.m., but he declined, instead [] asking to be taken to another bar, the "Rogue's Gallery," with one of his co-workers. The other co-workers used private transport services. A receipt from the Rogue's Gallery indicated three drinks were ordered in total: one "Love City Lager" and two "Neshaminy 2X IPAs." [Appellant] testified that he consumed two of these drinks. The bill was paid at 12:18 a.m. Shortly thereafter, a video from the parking garage of [Appellant's] workplace showed that he was unable to operate the automated payment machine. [Appellant] physically lifted the gate to leave the garage[, damaging it]. Once he left the garage, surveillance cameras captured images of [Appellant] driving through a stop sign. Video surveillance footage from the Scudder-Falls Bridge area … shows [Appellant] changing lanes and exiting the highway without using turn signals.

On December 6, 2019, at 1:45 a.m., an employee of Jefferson Torresdale Hospital drew a blood sample from [Appellant]. Police seized a serum plasma sample from [Appellant] pursuant to a search warrant executed on December 18, 2019. That sample was later submitted to National Medical Services for analysis. … [Appellant] had a whole blood alcohol concentration (BAC) of .151 percent. Toxicologist Donna Papsun offered her expert opinion that an individual with a BAC of .151 percent is incapable of safe driving.[3]

[PSP] Corporal Brianne Glad, an accident reconstruction expert, testified that she downloaded information from the event

_____

[3] Toxicologist Papsun further testified that an individual with a BAC of .151% would have delayed reaction time, delayed perception, and impaired judgment. N.T., 9/15/21, at 149-51.

data recorder, or "black box," from [Appellant's] vehicle. That information established [Appellant] was traveling at a speed of 113 miles per hour [(mph)[4]] five seconds prior to the collision with the victims' van. … **Half a second prior to the collision**[, **Appellant**] **was traveling at 115 miles per hour**. [Corporal Glad testified Appellant] did not apply [his vehicle's] brakes until, at most, four-tenths of a second before impact.

*Id.* at 5-6 (emphasis and footnote added; citations to record omitted).

Appellant testified at trial and admitted to consuming multiple alcoholic beverages over several hours. *See* N.T., 9/16/21, at 72, 85-86. Appellant stated that he nevertheless "felt fine to drive." *Id.* at 78. Immediately prior to the collision, Appellant testified, he attempted to retrieve his cell phone to utilize its GPS function, despite driving over 100 mph. *Id.* at 81; *see also id.* at 80-81 (Appellant stating he was lost and had missed his intended exit on I-95). Appellant conceded he (1) unbuckled his seatbelt; (2) took his eyes off of the road; (3) reached over to a backpack located on the passenger's side floorboard; and (4) grabbed his phone from inside the backpack. *Id.* at 81, 91; *see also id.* at 91 (Appellant stating on cross-examination he "thought it would be okay to reach down for a moment."). The collision ensued immediately thereafter. *Id.* at 81-82.

After the close of evidence, the trial court issued its charge to the jury. The court instructed as follows with respect to malice:

---

[4] It is undisputed that (1) the posted speed limit was 55 mph; and (2) there were no weather, mechanical, or roadway conditions that caused or contributed to the collision.

There's no one definition of malice because it can involve so many different circumstances and so many different factors…. And I am going to give you three separate explanations[.] … Malice is a shorthand way of referring to … particular mental states … of a defendant [] that the law regards as being bad enough to make the killing murder.

A killing is [committed] with malice if the defendant's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another person. In this form of malice, the Commonwealth need not prove that the defendant specifically intended to kill anybody. The Commonwealth must prove, however, that the defendant took action or engaged in conduct [] consciously; that is, knowingly[] disregarding the serious risk that his conduct was creating[,] and that … his disregard of that risk demonstrates an extreme indifference to the value of human life.

The second way malice is described is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, a mind regardless of social duty that indicates an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. …

… [T]he third way that the courts have defined malice is that the defendant consciously disregarded … an unjustified and extremely high risk that his actions might cause the death of another person or … [cause] serious bodily injury to another person.

N.T., 9/17/21, at 32-34 (formatting modified).[5]

The trial court additionally instructed: "[I]n deciding, you may not rely

on evidence that [Appellant] became intoxicated of his own volition in order

---

[5] The trial court's charge is consistent with the Pennsylvania Standard Criminal Jury Instructions. **See** Pa. SSJI (Crim) 15.2502C (third-degree murder); **see also Commonwealth v. Chmiel**, 30 A.3d 1111, 1184 (Pa. 2011) ("The law presumes that the jury will follow the instructions of the court." (citation omitted)).

to conclude that he was so intoxicated that he lacked the mental state required for the crime to be committed." **Id.** at 59; **see also Commonwealth v. Hutchinson**, 25 A.3d 277, 312 (Pa. 2011) ("A defense of … voluntary intoxication[] is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill.").

During deliberations, the jury asked the trial court for clarification with respect to the "three definitions of malice[.]" N.T., 9/17/21, at 72. The trial court then re-issued the same definitions detailed above. **Id.** at 72-74.

The jury found Appellant guilty of the aforementioned offenses, including third-degree murder and aggravated assault. The trial court convicted Appellant of the non-jury offenses. On October 15, 2021, the trial court sentenced Appellant to an aggregate 19½ - 39 years in prison.

Appellant filed a motion for reconsideration of sentence, which the trial court denied on November 9, 2021. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue:

> Was the evidence insufficient as a matter of law to sustain the verdicts for Third Degree Murder and Aggravated Assault Causing Serious Bodily Injury where the prosecution proof showed that Appellant, intoxicated, caused a tragic accident resulting in deaths and injuries but did not establish the requisite *mens rea* of malice?

Appellant's Brief at 5.

- 7 -

Appellant challenges the sufficiency of the evidence. This claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017).

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa. Super. 2010) (citation omitted).

> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa. Super. 2011) (citation omitted).

Appellant claims the Commonwealth failed to present sufficient evidence to support a finding of malice, which is necessary to sustain his convictions of third-degree murder and aggravated assault. ***See*** Appellant's Brief at 18-27. Appellant emphasizes the Pennsylvania Supreme Court has stated, "the decision to drive while under the influence of alcohol and/or a controlled substance does not, **standing alone**, constitute malice." ***Id.*** at 19 (emphasis

added) (quoting **Packer**, 168 A.3d at 170). According to Appellant, "[i]t is only when additional factors not present here are proved that malice can be found." **Id.** at 24 (citations omitted). Appellant avers his convictions contradict established precedent, which we discuss further below. **Id.** at 18 (Appellant claiming, "every precedential decision from the Pennsylvania Supreme Court and this Court confirm the insufficiency of the evidence as to malice"); **see also id.** at 27 (Appellant alleging the trial court, in its Pa.R.A.P. 1925(a) opinion, "cited to no decisional law that governs facts such as these").

Appellant further argues,

"Recklessness," by its nature, requires a "conscious" disregard of a substantial risk. 18 Pa.C.S. § 302. Because our Supreme Court has made clear that knowing one is drunk and then choosing to drive is not sufficient to establish this *mens rea*, **see** [] **Packer**, **supra**, there had to be something more that gave the driver[,] here, Appellant[,] the awareness "notice" that driving while inebriated that death was "essentially certain to occur."

Appellant's Reply Brief at 9-10 (brackets omitted); **see also** Appellant's Brief at 25 (claiming the notice or "'warning' could come from the defendant's own past, from the words of others, or from the circumstances of a particular case – it just had to be more than driving while intoxicated" alone).

The Commonwealth counters the evidence, viewed in the light most favorable to it as the verdict-winner, was sufficient for the jury to find Appellant acted with the *mens rea* necessary to sustain his convictions of third-degree murder and aggravated assault. Commonwealth Brief at 23, 30. The Commonwealth explains it

is not contending that drinking and driving "standing alone" constitutes malice, because the caselaw clearly demonstrates otherwise. Rather, it is the overwhelming and rampant instances of sustained recklessness[,] coupled with [Appellant's] drinking and ignoring the risks to the victims[,] that combined to demonstrate malice.

*Id.* at 31-32.

The Commonwealth further claims Appellant improperly "repeatedly attempts to impute [a] 'notice' or 'warning' requirement" to establish the *mens rea* necessary for both offenses. *Id.* at 49; *see also id.* at 46 (asserting "any sort of creation of a … requirement on third parties to take affirmative and overt actions to stop a defendant to establish the requisite malice is irrational and against established caselaw." (citations omitted)). According to the Commonwealth, "Appellant had repeated opportunities to stop and reflect upon his choices." *Id.* at 45.

We begin by considering *Packer*, where the appellant, shortly before a fatal vehicle crash, repeatedly "huffed" (*i.e.*, inhaled) aerosol dust cleaner, which caused her to become unconscious and lose control of her car. *Packer*, 168 A.3d at 163-64. Importantly, the appellant had a "history of losing consciousness after huffing and [] knowledge of the immediacy of the effects of huffing on her…." *Id.* at 171; *see also id.* (stating appellant "knew, from her numerous prior experiences with huffing, that the effects … on her were immediate, debilitating and persisted for ten to fifteen minutes following inhalation."). A jury convicted the appellant of third-degree murder and aggravated assault, among other offenses. *Id.* at 165.

The appellant appealed her judgment of sentence, challenging, in relevant part, the sufficiency of the evidence to support a finding of malice to sustain her convictions of third-degree murder and aggravated assault. *Id.* at 165-66. This Court affirmed. *Id.* at 166 (citing ***Commonwealth v. Packer***, 146 A.3d 1281, 1285 (Pa. Super. 2016)). The appellant petitioned for allowance of appeal, which the Pennsylvania Supreme Court granted. *Id.* at 166.

Before addressing the appellant's sufficiency challenge, the ***Packer*** Court observed that "an impaired driver who causes the death of another does not typically act with the requisite malice to support convictions of third-degree murder and aggravated assault." *Id.* at 166 (citing ***Commonwealth v. Kling***, 731 A.2d 145, 148 (Pa. Super. 1999) ("motor vehicle crashes seldom give rise to proof of the malice needed to sustain a conviction for third degree murder or aggravated assault.")); ***see also Packer***, 168 A.3d at 170 ("the *mens rea* generally associated with the decision to drive under the influence is ordinary recklessness and does not constitute malice."). However, the ***Packer*** Court recognized that "**each case must be analyzed on its own facts** against the standard established by this Court." *Id.* at 167-68 (emphasis added).

***Packer*** discussed the requisite *mens rea* to sustain convictions of third-degree murder and aggravated assault:[6]

> [O]ur courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm.

***Id.*** at 168 (citations and quotation marks omitted); ***see also id.*** at 172 (stating the "standard for malice … requires recklessness of consequences and the conscious disregard for an unjustified and extremely high risk that a chosen course of conduct might cause a death or serious personal injury."). The Court elaborated,

> [i]n the DUI context, this Court has held that the decision to drive while under the influence of alcohol and/or a controlled substance does not, standing alone, constitute malice. … ***O'Hanlon***, 653 A.2d at 618. We observed that neither "ordinary negligence" nor "mere recklessness" is sufficient to satisfy the *mens rea* of aggravated assault. ***Id.*** at 617-18. Instead, we found that the crime "requires a higher degree of culpability, *i.e.*, that which considers and then disregards the threat necessarily posed to human life by the offending conduct," and entails "an element of deliberation or conscious disregard of danger." ***Id.*** at 618.
>
> **For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.** The recklessness must, therefore, be such that life threatening injury is

---

[6] "There is no distinction between the malice essential to third degree murder and that necessary for aggravated assault." ***Kling***, 731 A.2d at 147; ***see also Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995) (aggravated assault is the functional equivalent of a murder in which, for some reason, death fails to occur).

essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury. ***Id.***

The ***O'Hanlon*** Court found that the requisite *mens rea* is only met in circumstances where "the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions ... [but] the consequence was ignored." ***Id.***

***Packer***, 168 A.3d at 170 (emphasis added; formatting modified).

The ***Packer*** Court held the totality of the evidence was sufficient to sustain the appellant's convictions, where she huffed "both immediately prior to and while operating a vehicle on a public highway"; knew from warning labels that "this product was not intended to be ingested"; and **had a known history of becoming unconscious from huffing**. ***Id.*** at 171. The Supreme Court stated,

This is not a typical case of ordinary recklessness that arises when someone chooses to drive while intoxicated. ***See O'Hanlon***, 653 A.2d at 618…. [**Appellant**] **consciously disregarded an unjustified and extremely high risk that her chosen course of conduct might cause a death or serious bodily injury.** ***See id.*** Because of [appellant's] history of losing consciousness after huffing and her knowledge of the immediacy of the effects of huffing on her, **she "could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of** [**her**] **actions ...** [**but**] **the consequence was ignored**." ***Id.***

***Packer***, 168 A.3d at 171 (emphasis added; some citations omitted; some citations modified); ***see also id.*** at 172 ("There is a significant difference between deciding to drive while intoxicated and deciding to drive with knowledge that there is a strong likelihood of becoming unconscious.").

In **Kling**, this Court rejected the appellant's sufficiency challenge to his third-degree murder and aggravated assault convictions. **Kling**, 731 A.2d at 150. While the appellant was not intoxicated, we held he maliciously exhibited sustained recklessness prior to a fatal car crash, despite an obvious risk of harm to others, while "racing" another driver at a high rate of speed on a dangerous mountain road. **Id.** The **Kling** Court stated:

> Appellant was deliberately racing his high-powered car at speeds of 75-80 m.p.h. on a two and one-half mile stretch of a curvy mountain road. He was familiar with this road, having traveled it two to three times per week for over a year prior to the crash. He passed five cautionary signs warning him to slow down around the treacherous curves. In spite of these warnings, appellant proceeded at high rates of speed and, cutting the curves in order to negotiate the turns, he nearly hit [a motorist] driving in the opposite lane of travel. Without a doubt, the aggregate of these circumstances plainly warned appellant his conduct was nearly certain to result in a serious or fatal disaster. Nevertheless, he consciously disregarded this awareness and continued his race for eight-tenths of a mile after running [a motorist] off the road. Illegally passing two pick-up trucks, **sustaining his reckless and malicious conduct**, appellant sped into a dangerous double blind curve[,] where he smashed into the victims.

**Id.** (emphasis added).

The **Kling** Court observed that motor vehicles "still outdistance firearms as the most dangerous instrumentality in the hands of irresponsible persons in our society today." **Id.** Importantly, we held, "a conviction based on malice is appropriate where evidence demonstrates the element of **sustained**

**recklessness**[7] by a driver in the face of an **obvious risk of harm** to his victims." *Id.* at 149 (footnote added; emphasis in original).

In *Dunphy*, the appellant drove after consuming a large amount of alcohol and struck and killed a pedestrian attempting to cross the street. *Dunphy*, 20 A.3d at 1216-17. This Court rejected the appellant's sufficiency challenge to his third-degree murder conviction, and upheld the jury's finding that he acted with the requisite malice. *Id.* at 1219-20. We stated, "[**m**]**alice may be inferred by considering the totality of the circumstances**." *Id.* at 1219 (emphasis added) (citing *Commonwealth v. Thomas*, 656 A.2d 514, 516 (Pa. Super. 1995)). The *Dunphy* Court held malice existed under the totality of the circumstances, comprised of the following factors:

- "The intoxicated condition of appellant[] and the excessive rate of speed he was traveling on a street where pedestrians were present";

- "The absence of any testimony that there was a physical or climatic condition that would explain his failure to stop before or after the accident";

---

[7] *Kling* defined "sustained recklessness" as a pattern supported by the facts and circumstances of the case, which exhibits

> the sustained, purposeful recklessness necessary to prove a knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur. Indeed, these circumstances are facts which allow a [factfinder] to find the [accused] had time and reason to calculate and reflect upon a deadly condition taking place, such that recklessness and malice exist.

*Kling*, 731 A.2d at 150 (quotation marks omitted).

- Appellant admitted "that although he saw pedestrians in front of him, he speeded up to make the [red traffic] light"; and

- Appellant's flight after striking a pedestrian.

*Id.* at 1219-20 (some capitalization altered).

Finally, in ***Commonwealth v. Urbanski***, 627 A.2d 789, 793 (Pa. Super. 1993), this Court found the Commonwealth presented sufficient evidence to support the jury's finding of malice for a third-degree murder conviction, where the intoxicated appellant drove and struck an oncoming vehicle, causing the death of the appellant's passenger. *Id.* at 791, 793-94. The appellant drove after consuming large amounts of alcohol; appellant ignored his passenger's repeated pleas to stop driving erratically; and there were no weather or road conditions to explain the accident. *Id.* at 793-94. We held that the appellant, under the totality of the circumstances, "**was or should have been aware of the danger that could result from driving so fast and so recklessly, especially after having had so much to drink.**" *Id.* at 794 (emphasis added).

Instantly, the trial court found the totality of the evidence established the requisite malice to sustain Appellant's third-degree murder and aggravated assault convictions:

> Upon review of the record in this matter, this [c]ourt finds the evidence to be sufficient to support the jury's finding of malice. The evidence established that [Appellant], a Bucks County resident, attended an open bar holiday party in Philadelphia after work the evening before the collision. Rather than taking the train, which was his habit when traveling back and forth from

work, [Appellant] chose to drive into Philadelphia. N.T., 9/16/21, at 49-51, 57-58, 83-84. He stayed at the party for approximately three hours, where he consumed vodka. Rather than proceeding home, he went to the public bar[,] where he remained for another two hours, this time drinking bourbon. Shortly after 10:00 p.m., approximately five hours after consuming his first drink, he rejected an offer of a ride home, instead choosing to go to yet another bar where he continued to drink. He stopped consuming alcohol sometime shortly before 12:18 a.m., approximately seven hours after he began to drink. Despite the availability of hotels and other transportation options, and knowing that he was substantially impaired, he chose to drive home. That decision remained unaltered even though he could not manage to get out of the [parking] garage without forcing his way out.

[**Appellant's**] **decision-making continued to demonstrate a conscious disregard for the safety of others**. … On I-95, **while intoxicated, he traveled without headlights, at high rates of speed,** [**and**] **alternated his speed from fast to slow. He did not use his turn signals and continuously changed lanes and passed other vehicles too closely**, all of which created such a dangerous situation that two drivers felt compelled to take evasive action and call 911. N.T., 9/13/21, at 138-40, 151, 153; N.T. 9/14/21, at 7, 9. **At the time** [**Appellant**] **rear-ended the victims' vehicle, he was driving at a speed of 115 mph. By his admission,** [**Appellant**] **did not have his eyes on the highway**[,] **since he was reaching down into a backpack on the passenger floor to retrieve his phone**…. N.T., 9/16/21, at 81-82, 91. As a result, he did not apply his brakes until less than half a second before impact.

After drinking continuously for at least six hours, [Appellant's] decision to drive at extreme speeds while weaving through traffic on a high-speed interstate highway "is not a typical case of ordinary recklessness that arises when someone chooses to drive while intoxicated." [] *Packer*, 168 A.3d at 171. To continue to drive in that fashion after nearly sideswiping two other vehicles who were forced to take evasive action demonstrates "a conscious disregard for 'an unjustified and extremely high risk that [Appellant's] actions might cause death or serious bodily harm.'" *Id.* at 168. Under all these circumstances, [**Appellant's**] **decision to attempt to retrieve his phone …, drawing his attention from the roadway for such a long time that he did not perceive a clearly visible vehicle in front of him and**

**failed to apply his brakes until less than half of a second before the collision, "brought about a situation so unnecessarily dangerous to human life" it all but "assure[d] that injury or death [would] ensue."** *Id.* at 170. Therefore, there is sufficient evidence to support the jury's finding of malice.

Trial Court Opinion, 3/4/22, at 10-12 (emphasis added).

Our review confirms the trial court's foregoing reasoning is supported by the record and the law. *See id.* This case is factually distinct from *Packer*, wherein the appellant was intoxicated from huffing and had a history of becoming unconscious from huffing. *See*, *e.g.*, *Packer*, 168 A.3d at 171-72 ("There is a significant difference between deciding to drive while intoxicated and deciding to drive with knowledge that there is a strong likelihood of becoming unconscious."). Nevertheless, like *Packer*, we conclude "[t]his is not a typical case of ordinary recklessness that arises when someone chooses to drive while intoxicated." *Id.* at 171; *see also id.* at 167-68 (stating that "each case must be analyzed on its own facts").

Moreover, upon careful review, we find the cases upon which Appellant relies are distinguishable. Appellant argues this case is governed by *Commonwealth v. Comer*, 716 A.2d 593 (Pa. 1998), *superseded by statute on other grounds*. *See* Appellant's Brief at 22-23; Appellant's Reply Brief at 6. The appellant in *Comer* drove while intoxicated (after consuming alcohol[8] and prescription muscle relaxers), and struck two people waiting for

---

[8] The appellant's BAC was 0.33%. *Comer*, 716 A.2d at 595.

a bus, killing one and seriously injuring the other. *Comer*, 716 A.2d at 595. The appellant was driving at an excess speed (approximately 10-20 mph over the speed limit), and his vehicle left the road after one of the tires struck a curb. *Id.* Additionally, "there was no [] evidence indicating that [a]ppellant quickly applied his brakes," nor any "obstruction on the roadway at the time of the accident." *Id.* The *Comer* Court held that the evidence was insufficient to prove the appellant acted with malice necessary to sustain his conviction of aggravated assault, *id.* at 596-97, finding that the "Commonwealth did not establish that [a]ppellant possessed the state of mind equivalent to that which seeks to cause injury." *Id.* at 596.

> We find *Comer* distinguishable. As this Court stated in *Kling*:
>
> Unlike *Comer*, the crash here did not ensue **immediately after** the driver became aware of his life-threatening conduct. To the contrary, **[A]ppellant had adequate time to calculate and reflect upon the consequences of his reckless conduct**, thus rendering the choice to continue it malicious.

*Kling*, 731 A.2d at 150 (emphasis added).

Appellant also relies on another distinguishable case, *Commonwealth v. McHale*, 858 A.2d 1209 (Pa. Super. 2004). Appellant's Brief at 24; Appellant's Reply Brief at 6-7. In *McHale*, the appellant drove his car after consuming a significant amount of alcohol, despite lacking a driver's license and insurance coverage. *Id.* at 1211. An off-duty police officer observed the appellant get into his car and leave a parking spot; he "revved the engine and then sped through the driveway adjacent to the bar prior to turning onto the

road."[9] *Id.* **Immediately thereafter**, the officer watched appellant's car "come into contact with a car parked on the side of the road and then collide with two people who had been standing near the car…." *Id.* The appellant "continued to drive away from the scene over [the officer's] shouts to stop." *Id.* On appeal, this Court agreed with appellant that the evidence was insufficient to establish the malice necessary to sustain his convictions of aggravated assault, stating his "actions do not rise to the requisite level of *mens rea* to show malice. [The appellant] was clearly negligent, but his actions did not rise to the level of recklessness required to support a conviction for aggravated assault." *Id.* at 1214.

Appellant also relies upon **Commonwealth v. Dellavecchia**, 725 A.2d 186 (Pa. Super. 1999) (*en banc*). Appellant's Brief at 23; Appellant's Reply Brief at 7-8. There, the appellant, who had a BAC of .194%, drove his truck in the parking lane of a highway, well in excess of the speed limit, and collided with another vehicle, causing injuries to multiple people. *Id.* at 187. On appeal, the appellant challenged the sufficiency of the evidence supporting his convictions for aggravated assault, claiming the *mens rea* element was absent, as his conduct was not malicious. *Id.* at 188. This Court agreed, relying primarily upon **Comer**, **supra**. *Id.* ("Pursuant to … **Comer**, we are constrained to conclude that the evidence here is insufficient to establish the

_____

[9] The posted speed limit of the relevant section of road was 35 mph; the appellant was driving between 35 – 50 mph. **McHale**, 858 A.2d at 1211.

*mens rea* element needed to sustain [a]ppellant's convictions for aggravated assault.").

> The ***Dellavecchia*** Court held,
>
> [I]ike ***Comer***, [a]ppellant drove at an excessive rate of speed over congested city streets, weaving in and out of traffic, prior to the crash. Also like the defendant in ***Comer***, [a]ppellant was under the influence of intoxicating substances, as he stipulated at trial to the fact that he had a blood alcohol content of .194%. If anything, the conduct in ***Comer*** was more egregious in that Comer made no attempt to apply his brakes or reduce his speed prior to striking the pedestrians. ***Comer***, … 716 A.2d at 595. Appellant, however, did apply his brakes in an effort to avoid impact.
>
> As an intermediate appellate court, we are bound to apply the decisions of our Supreme Court absent a legally relevant distinction. Because the facts of this case are substantially similar to those presented in ***Comer***, we conclude that the evidence was insufficient to establish that [a]ppellant possessed a state of mind equivalent to that which seeks to cause injury. We therefore reverse [a]ppellant's aggravated assault convictions.

***Id.*** at 189 (citations to record and footnote omitted).

We conclude ***McHale*** and ***Dellavecchia***, like ***Comer***, are primarily distinguishable from the instant case because "the crash here did not ensue immediately after the driver became aware of his life-threatening conduct." ***Kling***, 731 A.2d at 150 (distinguishing ***Comer***). To the contrary, Appellant had ample opportunity to reflect upon and cease his reckless conduct, yet he persisted over a considerable period of time. ***See***, ***e.g.***, ***Kling***, 731 A.2d at 150 ("appellant had adequate time to calculate and reflect upon the consequences of his reckless conduct, thus rendering the choice to continue it

malicious."). Moreover, Appellant was speeding at an excessive rate that was drastically higher than the situation in *Comer*, *McHale*, and *Dellavecchia*.

The evidence showed that Appellant, after drinking to excess over several hours, attempted to exit his parking garage, but could not operate the garage's payment machine. *See* N.T., 9/15/21, at 182-83, 191-93; N.T., 9/16/21, at 73-74. Appellant then damaged the gate when he forcibly opened it to exit. *See* N.T., 9/15/21, at 185; N.T., 9/16/21, at 76. Appellant's difficulties in exiting the garage certainly alerted him that he was too intoxicated to drive safely. Yet he was not deterred.

After Appellant began driving, numerous instances alerted him that continuing to drive, while significantly impaired, posed an extremely high and unjustifiable risk to others. Indeed, Appellant violated numerous traffic laws, drove recklessly for nearly an hour before the collision, and narrowly avoided hitting two other motorists on I-95 (prompting both motorists to call 911 to report Appellant's hazardous driving). *See* N.T., 9/13/21, at 138-41, 151; N.T., 9/14/21, at 7, 10; N.T., 9/15/21, at 90. Appellant twice missed his intended exit on I-95, despite having lived in the area for six years. *See* N.T., 9/15/21, at 203-04; N.T., 9/16/21, at 47, 79-81, 89-90. Immediately before the collision, the intoxicated **Appellant admittedly took his eyes off the road while driving over 100 mph**, and reached over to the passenger-side floorboard to retrieve his phone. *See* N.T., 9/16/21, at 81-82, 91.

Under the totality of the circumstances, the evidence was sufficient to demonstrate Appellant "displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." **Packer**, 168 A.3d at 168 (citations omitted). Appellant's extremely reckless conduct, especially by continuing to speed excessively after two near collisions, and taking his eyes off the road while significantly intoxicated, "virtually guarantee[d] some manner of accident w[ould] occur through the intentional doing of an uncalled-for act in callous disregard of its likely harmful effects on others." **Id.** at 171 (citations omitted). **Appellant maliciously exhibited *sustained* recklessness over a considerable period of time** prior to the fatal crash, despite an obvious risk of harm to other motorists and the general public. **See Kling**, 731 A.2d at 149 ("a conviction based on malice is appropriate where evidence demonstrates the element of **sustained recklessness** by a driver in the face of an **obvious risk of harm** to his victims." (emphasis in original)).

We acknowledge this case presents a close call. Nevertheless, we cannot conclude that the totality of the evidence with respect to malice "is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Dunphy**, 20 A.3d at 1219. We will not usurp the province of the jury. **See Commonwealth v. Sanchez**, 82 A.3d 943, 972 (Pa. 2013) (in reviewing a sufficiency challenge, we "may not substitute our own judgment for the jury's, as it is the fact-finder's province

to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted."). Viewing the evidence, as we must, in the light most favorable to the Commonwealth, we conclude the record supports the jury's finding that Appellant acted with the requisite malice to sustain his convictions of third-degree murder and aggravated assault. *See Packer*, 168 A.3d at 169-71; *Kling*, 731 A.2d at 149-50; *Urbanski*, 627 A.2d at 793-94. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

P.J. Panella, Judge Nichols, and Judge King join the Opinion.

Judge Stabile joins the Opinion and files a Concurring Opinion in which P.J. Panella, Judge Murray and Judge King join.

Judge Lazarus files a Dissenting Opinion in which Judge Dubow, Judge Kunselman and Judge McLaughlin join.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/07/2024